**UNITED STATES of America,**

v.

**William VENSON.**

**No. CRIM.00–201–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 12, 2003.

---

Charles Rosenberg, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for U.S.

Michael William Lieberman, Office of the Federal Public Defender, Alexandria, VA, for William Venson.

## ORDER

ELLIS, District Judge.

The matter is before the Court on *pro se* defendant's motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.[1]

The record reflects that on February 15, 2000, defendant entered the Southern Financial Bank, located at 362 Elden Street in Herndon, Virginia, at approximately 7:15 p.m., shortly after closing time.[2] At the time, defendant's face was obscured by a blue bandanna and a hooded jacket. He was also carrying a black Crossman Copperhead Auto II pellet hand gun that he

---

**1.** *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required...on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

**2.** Defendant had been fired from the bank several weeks earlier based on a series of cash shortages from his teller drawer.

had purchased approximately thirty minutes earlier at a nearby K–Mart store with the assistance and credit card of a woman he knew.

Once inside the bank, defendant directed the two remaining bank tellers, one of whom was acting as a co-conspirator, to proceed to the vault.[3] Defendant then directed the bank tellers to provide him with approximately $59,000 of the bank's funds. Later that evening, defendant and a female friend spent approximately $500 of the stolen funds on clothing at a Hecht's department store.

On February 16, 2000, defendant was interviewed by law enforcement agents regarding the robbery. At the time, defendant was wearing the clothes he had purchased the day before using the stolen funds. Shortly after the interview, he fled to Pittsburgh, Pennsylvania, where he was ultimately apprehended by the Federal Bureau of Investigation on May 4, 2000. A subsequent search of defendant's father's apartment in Reston, Virginia resulted in the seizure of a pellet gun scope, a box of pellets, a blue bandanna, body armor and a Hecht's shopping bag and receipt dated February 15, 2000.

On June 22, 2000, defendant pled guilty before Judge Albert V. Bryan, Jr.—without a plea agreement—to a one-count Indictment charging him with bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2. Following the plea hearing, but before sentencing, defendant's appointed counsel was permitted to withdraw as counsel of record because of a conflict of interest and new counsel was promptly appointed to represent defendant.

Sentencing occurred on October 13, 2000, at which time defendant, by counsel, raised three objections to the Presentence Investigation Report (PSIR), namely (1) that defendant was entitled to a reduction in his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, (2) that a two-point enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, was improper, and (3) that the career offender provisions of U.S.S.G. § 4B1.1 were not applicable. Alternatively, in the event the career offender provisions were found to apply, defendant moved for a downward departure pursuant to U.S.S.G. § 4A1.3 on the ground that criminal history category VI overstated his criminal history. In the course of the sentencing hearing, Judge Bryan overruled defendant's objections, denied his motion for a downward departure, adopted the PSIR, and sentenced defendant to 262 months imprisonment—the bottom of the Guidelines range set forth in the PSIR—to be followed by five years of supervised release. *See United States v. Venson,* Criminal No. 00–201–A (E.D.Va. Oct. 13, 2000) (Judgment and Conviction Order) (Bryan, J.). Yet, significantly, defendant was not advised of his appeal rights at sentencing, as required by Rule 32(c)(5), Federal Rule of Criminal Procedure.

On November 29, 2001, defendant filed a timely motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255,[4] arguing, *inter alia,* that his sec-

---

**3.** In this regard, defendant contends that following his termination, he and another bank employee, Kinta Carter, devised a plan to rob the bank while Carter was working. Defendant further contends that Carter instructed him when to arrive at the bank, how to act upon entering the bank and how to exit the bank undetected.

**4.** On October 1, 2001, less than one year after sentence was imposed, defendant executed a memorandum in support of his § 2255 motion and properly delivered it to prison authorities. Defendant later executed and delivered to prison authorities his actual § 2255 motion, on October 16, 2001. For reasons not disclosed in the record, defendant's § 2255 submissions were not filed with the Clerk's Office until November 29, 2001.

ond appointed counsel did not file an appeal with the Court of Appeals for the Fourth Circuit, as defendant requested, erroneously believing that defendant had waived his appeal rights when he pled guilty. By this Court's Order dated March 6, 2002, defendant's § 2255 motion was granted. *See United States v. Venson,* Criminal No. 00–201–A (E.D.Va. Mar. 6, 2002) (Order). Defendant thereafter appeared before this Court for a *de novo* resentencing hearing on May 3, 2002.

At the *de novo* resentencing hearing, defendant, by counsel, again raised three objections to the PSIR and moved for a downward departure pursuant to U.S.S.G. § 4A1.3. In the course of sentencing, defendant's objection to a two-point enhancement to his offense level for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, was overruled. Also overruled was his objection to the Probation Officer's decision to classify him as a career offender, pursuant to U.S.S.G. § 4B1.1, on the ground that one of the two predicate convictions used to classify him in this regard was invalid. Nonetheless, defendant's objection to the Probation Officer's failure to reduce his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, was sustained. Moreover, defendant's motion for a downward departure pursuant to U.S.S.G. § 4A1.3, on the ground that the career offender classification overstated his criminal history, was granted to the extent that defendant was classified at a total offense level of 28 and a criminal history category of V. Thereafter, defendant was sentenced to 130 months imprisonment—the bottom of the applicable Guidelines range—to be followed by five years of supervised release. Notably, this *de novo* resentencing served to reduce defendant's original custody sentence by more than half.

■ On May 2, 2003, within a year of resentencing, defendant executed another *pro se* motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, which was thereafter filed with the Clerk's Office on May 12, 2003. In his bare-bones motion, defendant raises only one claim, namely that his classification as a career offender was in violation of federal law because it was based on an invalid state conviction. He states, however, that "[t]he facts supporting this claim have not yet been developed because the invalid state conviction at issue...has not yet been invalidated." Defendant further notes that his "skeleton § 2255 motion" was filed at this time only to meet the one-year time limitation applicable to § 2255 motions and thus, he requests that his motion be held in abeyance until the litigation regarding the underlying state conviction is completed.

■ As defendant correctly acknowledges, the specific claim raised in the instant motion is not yet ripe for review, and it is therefore properly denied as premature at this time. Nonetheless, in the event defendant is ultimately successful in having a predicate state conviction invalidated, he may seek to reopen this § 2255 proceeding, if appropriate, for further adjudication of the instant claim.[5] In other words, should defendant succeed in invali-

---

5. *See McCarthy v. United States,* 187 F.3d 622, 1998 WL 1085766 (1st Cir. Dec.18, 1998) (finding no abuse of discretion in the district court's refusal to hold a § 2255 motion in abeyance while defendant sought to vacate prior convictions in state courts that were the basis for his sentence as an armed career criminal); *see also Stewart v. Martinez–Villa-* real, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (recognizing that a claim presented in a habeas petition and dismissed as premature should be adjudicated once it becomes ripe under the same standard as would govern claims raised in the initial petition).

dating a conviction that served as a predicate for his career offender status, he may then refile a § 2255 petition insofar as it relates to the instant claim.[6] And, despite defendant's understandable concern that his claim might then be time-barred, such a petition would still be timely under the statute provided it is filed within one year of the actual invalidation of the state conviction.[7] Indeed, consistent with recent Fourth Circuit precedent, it is the defendant's knowledge of a conclusive invalidation of a state conviction that triggers the one-year statutory limitations period, not his knowledge of the facts supporting the successful invalidation of the conviction. *See United States v. Gadsen,* 332 F.3d 224, 229 (4th Cir.2003) (holding that the one-year § 2255 statute of limitations "begins running when the state court conviction is conclusively invalidated").[8] This result is compelled by principles of fundamental fairness, as a meritorious challenge to a predicate state court conviction may take well in excess of one year to reach a final state resolution—a delay clearly not attributable to the defendant.

Accordingly, for the reasons set forth above, it is **ORDERED** that defendant's § 2255 motion is **DENIED AS PREMATURE**, without prejudice to defendant's right to refile his § 2255 motion, if appropriate, in the event the instant claim becomes ripe for review.

It is further **ORDERED** that defendant's request to have this matter held in abeyance until the litigation regarding his underlying state conviction is completed is **DENIED**.

Should defendant wish to appeal this Order he must do so within 60 days, pursuant to Rules 3 and 4, Fed. R.App. P.

The Clerk is directed to send a copy of this Order to defendant and all counsel of record.

---

**6.** *See, e.g., United States v. Bacon,* 94 F.3d 158, 162 n. 3 (4th Cir.1996) (recognizing that if a defendant succeeds in a future collateral proceeding in overturning a predicate state conviction, federal law enables him then to seek review of any federal sentence that was enhanced due to his state conviction) (citations omitted); *United States v. Pettiford,* 101 F.3d 199 (1st Cir.1996) (recognizing that once a defendant succeeds in having underlying state court convictions vacated, the career offender provisions are no longer applicable to the defendant's federal sentencing computation and he is entitled to be resentenced); *United States v. Nichols,* 30 F.3d 35 (5th Cir. 1994) (holding that a petitioner who obtained a vacatur of a state conviction underlying a federal career offender enhancement stated a claim for relief under § 2255).

**7.** Section 2255 provides, in pertinent part, that "[t]he limitation period shall run

from ... the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

**8.** *See also United States v. Hoskie,* 144 F.Supp.2d 108, 111 (D.Conn.2001) (holding that "the one-year statute of limitations starts to run on the date the state convictions are vacated, not an earlier date when the defendant discovered the facts forming the basis for the attack on the state convictions"); *but see Brackett v. United States,* 270 F.3d 60, 68 (1st Cir.2001) (holding that the operative date under § 2255 "is not the date the state conviction was vacated, but rather the date on which the defendant learned, or with due diligence should have learned, the facts supporting his claim to vacate the state conviction").