**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0028n.06**
**Filed:  January 10, 2006**

**No. 04-2443**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| RONALD DEE WATT, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE WESTERN DISTRICT |
| UNITED STATES OF AMERICA, | ) | OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

_____

BEFORE:  CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Ronald Watt appeals the denial of his motion to correct, modify, or vacate sentence brought pursuant to 28 U.S.C. § 2255.  Petitioner seeks resentencing for his 1992 convictions for bank robbery, 18 U.S.C. § 2113(a), bank larceny, 18 U.S.C. § 2113(b), and escape, 18 U.S.C. § 75(a), on the grounds that his career-offender sentence enhancement was based, in part, on state-court convictions which have subsequently been vacated by the state courts because they were void.  In summary, the complex factual scenario is as follows.

In 1980, petitioner Ronald Watt pled guilty in state court to armed robbery, concealing stolen property, and arson.  As called for by the plea agreement, but in violation of Tennessee law, the state court ordered the state sentences to be served concurrently with an existing federal sentence.

In 1992, a jury convicted Watt in the U.S. District Court for the Western District of Michigan for bank robbery offenses and escape. In determining Watt's sentence, the district court considered his state convictions. Under the Guidelines, the state convictions added offense levels and criminal history points and rendered Watt a career offender. The district court sentenced Watt to 260 months in prison.

In 1996, sixteen years after his state sentencing, Watt filed a state habeas petition, claiming that his state convictions were void because the sentence promised by the prosecution and imposed by the state court violated Tennessee law. In April 2000, the Tennessee court voided Watt's state convictions.

Also in 1996, nearly four years after his federal sentencing and three years after his direct appeal, Watt filed a motion to vacate his federal sentence pursuant to 28 U.S.C. § 2255. Among other things, he contended that his state convictions were illegal because of the aforementioned sentencing defect and therefore should not have been considered. The district court dismissed for untimeliness under AEDPA, but this court reversed and remanded. Watt filed a supplement to his motion in 1999, but the district court dismissed it as an impermissible successive motion. We again reversed and remanded.

On remand, the district court dismissed Watt's 1996 motion on the ground that the state courts had not yet ruled on his state habeas action seeking to vacate the state convictions. Watt moved for reconsideration after the state courts vacated his state convictions, but the district court

summarily denied the motion in June 2000. Watt appealed. We dismissed Watt's appeal but granted

him leave to file a new § 2255 motion, which he did in 2001 ("the 2001 motion").

In October 2004, the district court dismissed the 2001 motion on three grounds: (1) Watt's

delay in filing prejudiced the government; (2) the motion advanced new grounds for relief which he

should have raised in the 1996 motion; and (3) his claim was not cognizable under § 2255 because

the state convictions were set aside on state-law rather than constitutional grounds.

Watt appeals. Consistent with *Custis v. United States*, 511 U.S. 486, 497 (1994), we hold

that Watt's claim is cognizable under § 2255. For the reasons that follow, we reverse and remand

for resentencing without consideration of Watt's vacated state convictions.

I.

A final ruling on a § 2255 motion is not appealable unless a district or circuit judge issues

a certificate of appealability ("COA"). *See* FED. R. APP. P. 22(b)(1); 28 U.S.C. § 2253(c)(1)(B). The

district court issued a COA that asks whether it "incorrectly applied the procedural rules for delay

and abuse of the writ by failing to examine the timeliness of his claim under AEDPA, and by

misapplying and conflating the requirements of Rule 9 of the Rules Governing § 2255 Motions."

Consequently, we have jurisdiction to decide those issues. *See* 28 U.S.C. § 2253(c)(3).

II.

State Court Proceedings

In detail, the following state and federal proceedings are relevant. In 1980, Watt pled guilty

in state court to felony armed robbery (ten years), two counts of concealing stolen property (three

years), and two counts of arson (three years). The court ran the sentences consecutively to each other, but concurrently with a federal sentence Watt was serving.

Thirteen years later, in 1993, Watt petitioned for post-conviction relief in state court. He contended that his state convictions should be set aside because the trial court did not ensure that he was adequately advised of his rights before pleading. A state trial court dismissed Watt's petition, and a state appeals court affirmed. *See Watt v. Tenn.*, 894 S.W.2d 307 (Tenn. Crim. App. 1994).

In May 1996, Watt filed a habeas petition in county court. Watt contended that his state sentence was illegal because the plea agreement was contrary to Tennessee Code § 39-1-702, which required that the armed robbery sentence run *consecutively* to his federal sentence. The state court dismissed Watt's petition on two grounds: (1) the Tennessee Code excluded federal inmates from state habeas relief, and (2) the state courts lacked authority to order Watt's release from federal custody. Watt appealed. The appeals court reversed and remanded, directing the state trial court to appoint counsel to represent Watt and consider his petition's merits. *See Watt v. Tenn.*, No. 03C01-9609-CR–00343, 1999 WL 39004 (Tenn. Crim. App. Jan. 28, 1999).

On remand, a state court voided Watt's state convictions in 2000, stating, "The convictions must be set aside because they were based on a plea agreement that was conditioned on the state sentences being served concurrently with the federal sentences." *Watt v. Tenn.*, Case No. 11481 (Tenn. Cir. Ct., Roane Cty., Apr. 2, 2000).

III.

Federal Proceedings

In February 1992, a federal jury convicted Watt of one count of bank robbery by intimidation and one count of bank robbery with the intent to commit larceny, both in violation of 18 U.S.C. § 2113(a), and one count of bank larceny and theft in violation of 18 U.S.C. § 2113(b). In June 1992, Watt pled guilty to escape from custody in violation of 18 U.S.C. § 751(a).

The presentence report ("PSR") calculated an initial offense level of twenty-seven. The PSR then calculated Watt's criminal history score, adding six points due to his 1980 state convictions, two points because he was on parole for the state crimes when he committed the instant crimes, and one point because he committed the instant crimes less than two years after he was released from prison for the state crimes. The total of nine criminal history points initially placed Watt in criminal history category IV. Watt's state felony convictions, however, rendered him a career offender under U.S.S.G. § 4B1.1, elevating him to criminal history category VI and offense level thirty-two.

Without the career offender designation, an offense level twenty-seven and criminal history category IV would have yielded a presumptive Guidelines sentencing range of 100 to 125 months. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table (Nov. 1, 1991, and Nov. 1, 1992, versions).

Moreover, all of Watt's criminal history points were attributable to his now-voided state convictions. Therefore, it appears that if Watt were sentenced without consideration of those convictions, he would have a criminal history score of zero, category I. In that category, twenty-seven offense levels would have yielded a presumptive Guidelines range of only seventy to eighty-seven months imprisonment.

As a career offender, however, Watt's offense level and criminal history category yielded a Guidelines range of 210 to 262 months on each bank robbery count. The court imposed 210 months for each robbery, 120 months for larceny, and 50 months for escape. The court ran the bank sentences concurrently with one another, but consecutively to the escape sentence, yielding a term of 260 months.

In July 1992, Watt appealed. As to his sentence, Watt contended that the district court erred in considering his state convictions, which were unconstitutional because he was not properly advised of his rights before pleading. He did *not* contend that the state convictions were void because his pleas were based on the promise of an illegal sentence. In 1993, we affirmed Watt's federal convictions and sentence. *See United States v. Watt*, Nos. 92-1934 and 92-1935, 996 F.2d 1218, 1993 WL 190912 (6th Cir. June 3, 1993).

In May 1996, Watt filed a § 2255 motion to vacate his sentence, alleging ineffective assistance of trial counsel. At the end of Watt's brief he asserts, without citation to authority, that the district court erred in considering his state convictions because they were void as violative of state law. Due to an intervening appeal and remand, Watt filed his reply brief three years later, in May 1999. Watt's reply reserved his right to raise that same claim, noting that a state appeals court had directed the state trial court to address that claim and the trial court had not yet done so.

The district court held that the motion was time-barred under AEDPA, which provides:

A 1-year period of limitation shall apply to a motion under this section [2255]. The limitation period shall run from the latest of –

(1)      the date on which the judgment of conviction becomes final; [or]

\* \* \*

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  Watt appealed, and we reversed, following our sister circuits' reasoning:

> The Seventh Circuit has held that no collateral attack filed by April 23, 1997 [one year after AEDPA became effective], may be dismissed under § 2244(d) and the parallel provision added to 28 U.S.C. § 2255 by § 105 of the Act.  The Second Circuit has held that while it would not give prisoners a full year to file after the effective date of the Act, the alternative of a "reasonable time" should not be applied with undue rigor.  Moreover, several courts have held that [for] a prisoner whose conviction became final before April 24, 1996, the effective date of the AEDPA, the one-year statute of limitation does not begin to run until April 24, 1996.
>
> Watt timely filed his § 2255 motion.  The record reflects that Watt filed his motion to vacate on May 3, 1996, approximately eight days after the effective date of the AEDPA.  Thus, the district court improperly denied Watt's § 2255 motion because he filed the motion well within one year of the effective date of the AEDPA.

*Watt v. United States*, No. 96-2136, 168 F.3d 491, 1998 WL 808368, at \*1-2 (6th Cir. Nov. 9, 1998) (citations omitted).  We remanded for the district court to consider the merits of Watt's motion.

On remand in 1999, Watt filed a reply that supplemented his 1996 motion.  He again contended that his state convictions were void because the sentence promised and imposed was illegal.  In January 2000 the district court dismissed, stating, "The Petitioner . . . contends that the Court improperly considered two prior armed bank robberies in sentencing him because the convictions were constitutionally infirm.  This claim was previously raised and adjudicated in his direct appeal." *Watt v. United States*, No. 1:96-CV-363, slip op. at 26 (W.D. Mich. Jan. 4, 2000).

On the contrary, Watt's appeal had contended only that his state convictions were invalid because he was not properly advised of his rights before pleading, for reasons unrelated to the

legality of running his state sentences concurrently with his federal one. *See Watt*, 1993 WL 190912.

In January 2000, Watt moved for reconsideration of his claim that the state convictions were invalid because the sentences violated state law. The district court denied reconsideration:

> The Court is aware that the Petitioner is presently challenging this conviction [his state convictions] in state court through a habeas corpus petition. The conviction, both at sentencing and at the present time, is valid. This Court will not revisit the Petitioner's sentence until such time that a state court has reversed the judgment.

*Watt v. United States*, No. 1:96-CV-363, slip op. at 1-2 (W.D. Mich. Jan. 26, 2000).

In April 2000, the state court voided Watt's state convictions. Thereafter, Watt filed a second motion for reconsideration in the federal district court. In June 2000, the district court issued an order stating, "Movant having failed to convince the Court that its prior rulings were erroneous, the Court hereby **DENIES** Movant's second motion for reconsideration and any further motions for reconsideration, without the necessity of further court action in this matter." *Watt v. United States*, No. 1:96-CV-363, slip order at 1 (W.D. Mich. June 16, 2000).

In December 2000, with the district court declining to reconsider his claim despite the invalidation of his state convictions, Watt filed a notice of appeal and an application for leave to file a second § 2255 motion. We granted Watt leave to file a new § 2255 motion; accordingly, we dismissed Watt's appeal from the denial of his 1996 motion. *See In re Watt*, No. 00-2062 (6th Cir. May 15, 2001) and *Watt v. United States*, No. 00-1725 (6th Cir. Mar. 2002).

In accordance with our May 15, 2001 order, Watt filed a new § 2255 motion. Nonetheless,

in April 2002 the district court denied the motion as an impermissible successive motion. The

district court denied reconsideration and refused to issue a COA. We granted a COA and reversed:

> In 2000, a Tennessee state court vacated the convictions on which the district court
> had based its career offender determination. Thus, under this Court's instructions
> from *Watt I*, Watt was now in a position to seek a re-determination of his career
> offender status and potentially a reduction in his [federal] sentence. This is exactly
> what Watt did by filing a motion for reconsideration with the district court that
> apprised the court of the vacation of his state court convictions. In a brief order, the
> district court denied the motion, stating simply that Watt had "failed to convince the
> Court that its prior rulings were erroneous." Watt then appealed . . . . A panel of this
> Court granted a [COA] as to whether the district court improperly had denied Watt's
> motion for reconsideration.
>
> Had the procedural machinations ended there, this Court would have been in a
> position in 2001 to examine the district court's basis, or lack thereof, for failing to
> grant Watt's motion for reconsideration and to reassess the career offender
> component of Watt's sentence. Unfortunately, Watt, proceeding *pro se*, confounded
> matters by separately seeking leave to file a second or successive motion to vacate.
> This Court granted Watt leave to file another § 2255 motion . . . but later dismissed
> as duplicative the direct appeal of the district court's denial of the motion for
> reconsideration [of the denial of his first § 2255 motion]. Watt then filed a
> successive motion to vacate in the district court. The district court denied the motion
> without reaching the merits because the motion did not present newly discovered
> evidence or rely on a new rule of constitutional law and thus did not meet the
> gatekeeping requirements for relief as a second or successive motion under 28 U.S.C.
> § 2244.
>
> We hold that Watt's § 2255 motion should not be categorized as second or
> successive because the district court failed to comply with § 2255 when it refused to
> reconsider its denial of Watt's original § 2255 motion. . . .

*Watt v. United States*, No. 02-1677, 96 F. App'x 287, 288-89 (6th Cir. Mar. 30, 2004) (citations and

record citations omitted).

We noted that under § 2255 rules, a movant is entitled to have the court serve the motion on the government and order it to respond, consider whether to hold a hearing, and issue findings of fact and conclusions of law *unless* the motion papers conclusively show that he is entitled to no relief. *See* § 2255 Rules 4(b) and 8(a). It was not clear from Watt's 2001 motion that he was not entitled to relief. Accordingly, we remanded for the district court to examine the career offender enhancement in accordance with § 2255 rules and procedures. *See Watt*, 96 F. App'x at 289-90.

In October 2004, the court dismissed the 2001 motion on three grounds, two equitable and procedural and one substantive. The district court dismissed Watt's motion under former § 2255 Rule 9(a), which permitted dismissal "if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing." *Watt v. United States*, No. 1:01-CV-331, slip op. at 10-16 (W.D. Mich. Oct. 22, 2004). Alternately, the district court held that Watt's claim is not cognizable under § 2255 because the state convictions were set aside due to a technical violation of state law rather than a federal constitutional violation. Watt appeals from that order.

IV.

We review a ruling on a habeas petition or § 2255 motion de novo, but we review factual findings only for clear error. *See Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005) (citation omitted), *reh'g denied* (6th Cir. Feb. 8, 2005).

V.

We first consider whether Watt defaulted his claims by failing to raise them in his direct appeal to this court. We conclude that he did not.

Generally, a criminal defendant cannot raise claims on federal collateral attack (e.g., a habeas petition under 28 U.S.C. § 2254 or a motion to vacate, modify or correct sentence under 28 U.S.C. § 2255) if he did not raise them in his direct federal appeal. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citations and internal quotation marks omitted). To obtain collateral review, a defendant must clear a significantly higher hurdle than would exist on direct appeal:

> In the case where the defendant has failed to assert his claims on direct appeal *and thus has procedurally defaulted*, in order to raise them in a § 2255 motion he must also show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent.

*Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.) (emphasis added) (citing *Bousley*, 523 U.S. at 622), *cert. denied*, 540 U.S. 1024 (2003).

Here, however, Watt has an unassailable reason for not challenging his state convictions on his direct appeal to this court: as a matter of law, he was not permitted to do so. In *Custis v. United States*, 511 U.S. at 497, the Supreme Court held that prior state convictions used to enhance a sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), may not be collaterally challenged at federal sentencing proceedings. The sole exception to this general rule is that a defendant may challenge those convictions obtained in complete violation of the Sixth Amendment right of indigent defendants to have appointed counsel as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963).[1] In *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995), this

---

[1]The *Gideon* exception applies only if the defendant shows that he was completely unrepresented in the state proceedings, not merely that his state counsel rendered ineffective

court held that the reasoning in *Custis* dealing with enhancements under the ACCA also applied to enhancements under Sentencing Guideline § 4B1.1.

Instead, the defendant must attack his state convictions in the state courts; if he does so successfully, "he may then apply [in a federal habeas petition or § 2255 motion] for reopening of any federal sentence enhanced by the state" conviction. *Custis*, 511 U.S. at 497; *see also United States v. Steverson*, 230 F.3d 221, 226 n.4 (6th Cir. 2000).

Watt followed the procedure contemplated by *Custis*. He successfully challenged his state convictions in state court, and only then did he seek § 2255 relief from the federal sentence enhancement that had been predicated on those convictions.[2]

Thus, Watt did not default his claim by failing to raise it in his direct appeal to this court.

VI.

Watt contends that if a § 2255 motion complies with AEDPA's limitations period, it is presumed to be timely. He filed his motion in April 2000, nine days after the state courts vacated the convictions at issue, so he satisfied AEDPA. Watt states that the district court had "many opportunities . . . over the years" to find his motion untimely under AEDPA but has never done so.

Watt's statement is inaccurate in two respects. First, this appeal is from the district court's October 2004 order, which dismissed his *2001* § 2255 motion, not anything filed in 2000. What

assistance. *See Custis*, 511 U.S. at 496.

[2]*See Smith v. United States*, 262 F.3d 537 (6th Cir. 2001) (defendant could not use § 2255 to vacate federal sentence on ground that state convictions used to enhance federal sentence were unconstitutional, as he made no effort to challenge those convictions in state court).

Watt filed in 2000 were motions to reconsider the denial of his 1996 motion, which are not on appeal. Second, it does not appear that the government moved to dismiss Watt's 2001 motion on the ground of untimeliness under AEDPA, so the district court did not have "many opportunities" to dismiss his 2001 motion on that ground. Indeed, once the government filed an answer or motion to dismiss that did not raise the AEDPA limitations defense, dismissing Watt's motion sua sponte for AEDPA untimeliness would have been "an impermissible curing of the respondent's waiver" of the AEDPA limitations defense. *See Scott v. Collins*, 286 F.3d 923, 930 (6th Cir. 2002).

Watt also contends that his motion should not have been dismissed for prejudicial delay under Rule 9(a), because (1) he acted diligently by raising the instant claim within days of the state court's vacatur of his convictions, and (2) he did not commit any delay in filing his § 2255 motion that prejudiced the federal government's ability to respond to that motion.

Watt further argues that his motion should not have been dismissed for abuse of the writ under Rule 9(b), because that rule applies only to "successive" motions, and his 2001 motion was not successive. The reason Watt could not secure relief through his 1996 motion is that the district court refused to consider the merits of that motion until and unless the state court vacated his state convictions. When the state court did so, the district court still refused to consider the merits of his 1996 motion. Watt contends that he has not abused the writ by raising new arguments in successive motions, because he has always argued that his sentence was inappropriately enhanced through the use of invalid state convictions.

Also, Watt correctly contends that the district court conflated the 9(a) delay analysis with the 9(b) successive-motion / abuse-of-the-writ analysis. The number of § 2255 motions Watt filed is not relevant under Rule 9(a), which deals only with prejudicial delay. Conversely, how long Watt waited to file his motions is not relevant under Rule 9(b), which deals only with successive motions that raise "new and different" grounds for relief that should have been raised in a prior motion.

Lastly, Watt argues that his motion was timely under AEDPA. Watt recognizes that the district court's opinion and order do not address that issue. He is merely responding to the government's attempt to raise that defense, apparently for the first time, on appeal. Although the district court's opinion and order do not make any ruling on AEDPA timeliness, the government argues that Watt's motion was untimely under AEDPA.

The government also contends that the laches theory continues to apply, in the form of § 2255 Rule 9(a), and can be used in extreme cases to deny a petitioner relief, even where the petition is filed within the AEDPA time limits. The government cites decisions where this court affirmed dismissal of habeas petitions because the delay in their filing prejudiced the government's ability to respond to the petition due to loss of witnesses, transcripts, or evidence.

As to dismissal for abuse of the writ under 9(b), the government contends that Watt should have raised the instant claim in his original (1996) § 2255 motion. The government fails to address our 2002 ruling that the instant (2001) motion is *not* to be considered a second or successive motion.

The district court conceded that Watt filed his second motion for reconsideration of the denial of his § 2255 motion only fifteen days after his state convictions were vacated. *See Watt v.*

-14-

*United States*, No. 1:01-CV-331, slip op. at 10 (W.D. Mich. Oct. 22, 2004). Nonetheless, the court

dismissed for unreasonable delay[3] and for abuse of the § 2255 process, reasoning as follows:

> The government contends . . . that Movant delayed raising the issue of the illegal
> concurrent sentence both in the state court and in this Court, and that this delay
> caused the government prejudice.
>
> Movant contends that contrary to the government's assertions he promptly
> challenged the validity of his state court convictions after his direct appeal of his
> federal sentence was concluded [in 1993]. He notes that he filed his first attempt to
> set aside his state convictions in 1993. He also contends that the government cannot
> claim surprise because he had raised the issue of the invalidity of his state
> convictions issue [sic] on direct appeal, in his original 1996 federal habeas petition,
> and again in January 2000 when he moved for reconsideration in this Court.
>
> Movant glosses over the fact that the grounds he raised for setting aside his 1980
> state convictions changed over time.

*Id.* at 11. Namely, from 1992 until 1999, Watt argued only that his state convictions were invalid

because he had not been properly advised of his rights before pleading guilty: in his 1992 objections

to the PSR, his 1993 direct appeal to this court, his 1993 state habeas petition, and his 1996 § 2255

motion. Not until his May 1999 reply brief did he argue that his state convictions were invalid

because the promised sentences violated state law. The district court then stated,

> Movant could have moved to set aside his conviction in state court on the grounds
> of the illegal concurrent sentence as early as 1980. All of the predicate facts were
> in existence at that time. The issue could also have been raised in this Court in 1996

---

[3]*Contrast United States v. Venson*, 295 F. Supp. 2d 630 (E.D. Va. 2003), where defendant
filed a § 2255 motion contending that the state conviction underlying his career offender
enhancement was invalid. The district court held that the motion was premature until the state courts
invalidated that conviction. Once they did so, however, defendant's motion to reopen his § 2255
proceeding was timely because it was filed within a year from when he learned the conviction had
been conclusively invalidated. *See id*. at 633-34 (citation omitted).

when Movant filed his original § 2255 motion. . . . He did not raise this new ground for relief until he filed his reply brief in May 1999. Because this was a new and different ground for relief from his federal sentence and because Movant delayed in filing this claim, his claim was not timely.

. . . By the time Movant's state convictions had been set aside on the basis of the illegal concurrent sentence[s], 20 years had elapsed since his original convictions. Witnesses' memories of the events surrounding the 1980 crimes of armed robbery and arson were undoubtedly diminished. The state no longer had an interest in re-prosecuting Movant for these stale charges.

\* \* \*

*Because Movant did not have his 1980 convictions set aside on constitutional grounds this Court finds that this case calls for application of the abuse of the writ doctrine. . . . Abuse of the writ is not confined to instances of deliberate abandonment.* The doctrine implicates concerns with the need for finality in judgments and the burden on federal judicial resources. It also grows out of the concern that habeas corpus review may give litigants incentives to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh.

Regardless of what the motivation was for Movant's delay in challenging his 1980 state convictions on the basis of the illegal concurrent sentence[s], *it is sufficient to note that the delay has severely prejudiced the government in this case because the state no longer has an interest [in re-prosecuting] or ability to re-prosecute the Movant on the very serious crimes that were properly considered in determining that Movant should be sentenced as a career offender in this Court.*

*Id.* at 14 (emphasis added) (citations and internal quotation marks omitted). As shown below, the

district court's use of delay as a ground for dismissing Watt's 2001 motion is at odds with Rule 9(a).

AEDPA became effective on April 24, 1996. *See Griffin v. Rogers*, 399 F.3d 626, 629 (6th

Cir. 2005). AEDPA created a one-year limitations period for § 2255 motions. But it did not purport

to repeal former § 2255 Rule 9(a), which authorized dismissal of a § 2255 motion due to laches:

> Delayed motions. A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it [the motion] is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.[4]

Rule 9(a) was not officially repealed until 2004. This creates a conundrum: from AEDPA's effective date (April 1996) until Rule 9(a)'s repeal (December 2004), both AEDPA's one-year limitations period and Rule 9(a)'s discretionary laches provision were on the books.

The Supreme Court has "repeatedly stated that . . . absent a clearly expressed congressional intention, repeals by implication are not favored. . . ." *Branch v. Smith*, 538 U.S. 254, 273 (2003) (internal citations and quotation marks omitted). An implied repeal will be found only where "provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Branch*, 538 U.S. at 273 (citation omitted). Moreover, the Court has cautioned that "[i]nferring repeal from legislative silence is hazardous at best. . . ." *Cook County, Ill. v. US ex rel. Chandler*, 538 U.S. 119, 132 (2003).

This court has never decided whether AEDPA implicitly replaced Rule 9(a), and a recent panel noted a dearth of authority on the point. The panel implied, however, that a § 2254 petition should not be dismissed for laches if it is filed within AEDPA's limitations period:

> Prior to the enactment of AEDPA, there was no specific time limitation for the filing of a federal habeas petition. Rule 9(a) of the Rules Governing Section 2254 cases established a standard allowing the dismissal of unduly delayed habeas petitions.

---

[4]Rule 9(a) became effective in February 1977 and was never amended until its repeal in 2004. *See* Pub. L. No. 94-426, § 2 (9), Sept. 28, 1976, 90 Stat. 1335 (enactment).

>It is not clear how that rule should be enforced following the enactment of a specific time limitation in AEDPA. Other than one District Court case applying a particular Second Circuit doctrine that we have not adopted and which shortens even the AEDPA one-year standard, . . . we have found no cases applying a laches or laches-type defense to a petition timely filed under AEDPA. . . .

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted).

But we need not decide today whether AEDPA repealed former Rule 9(a). As discussed below, even if 9(a) was in force when Watt filed his 2001 motion, it did not authorize dismissal here.

This court held that Watt's *1996* motion was timely under AEDPA. *See Watt*, 1998 WL 808368 at *1-2. But Watt took this appeal from the order dismissing his *2001* motion. The government contends that Watt did not meet AEDPA's one-year time limitation for the filing of a § 2255 motion where he "did not pursue state habeas relief with reasonable diligence." The government then asserts, "Although the government had argued this issue, the district court determined that the defendant's motion was untimely but did not specifically discuss the operation of [§ 2255] paragraph 6(4)." The record on appeal, however, does not suggest that the government sought to dismiss Watt's 2001 motion for untimeliness under AEDPA. *See generally Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002) (failure to comply with AEDPA statute of limitations is an affirmative defense, which can be waived if not properly raised).

In any event, the district court's opinion and order do not address AEDPA timeliness. The COA does not mention AEDPA except to note Watt's dissatisfaction that the district court did *not* determine whether his 2001 motion was timely under AEDPA. *See generally Hill v. Mitchell*, 400 F.3d 308, 329 (6th Cir. 2005) (court lacked jurisdiction over issue not listed in COA), *reh'g and*

*reh'g en banc denied*, 140 F. App'x 597 (6th Cir. June 20, 2005), *cert. denied*, 74 U.S.L.W. 3322,

— S. Ct. — (Nov. 28, 2005).

Moreover, the determination of a filing's timeliness, under AEDPA or otherwise, should

generally be made by the district court in the first instance. *See First City Bank v. NCUA Bd.*, 111

F.3d 433, 439 (6th Cir. 1997) (whether a claim is barred by a statute of limitations is "a factually

intensive claim that this court is ill-equipped to consider in the first instance").[5]

We assume arguendo that AEDPA's limitations period for § 2255 motions did *not* implicitly

repeal former § 2255 Rule 9(a). On that view, AEDPA and former § 2255 Rule 9(a) coexisted until

the latter was deleted in 2004. Then Rule 9(a) was in effect in 1996, when the court received Watt's

original motion; in 1999, when Watt filed a "reply" supplementing his 1996 motion; in 2001, when

Watt filed a new § 2255 motion; and in 2004, when the district court invoked Rule 9 and dismissed

the 2001 motion. In this scenario, Watt's 2001 motion could be timely under AEDPA but still

subject to dismissal for laches under Rule 9(a).

Even so, 9(a) does not authorize the dismissal of a § 2255 motion whenever the movant's

delay in filing it prejudiced the government *in some way*. Rather, according to the plain text of the

---

[5]*Accord Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 989 (9th Cir. 2004) ("[T]he statute of limitations has not been addressed by the district court and is not before us now, so we do not decide this question of law"); *Lebron-Rios v. USMS*, 341 F.3d 7, 12 n.6 (1st Cir. 2003) ("Whether the limitations period had expired . . . is not for us to decide. [That] . . . is a matter for the responsible agency in the first instance, and for the district court in the next."); *Villanueva v. United States*, 346 F.3d 55, 63 (2d Cir. 2003) ("[W]e decline to consider in the first instance Tran's argument that AEDPA's limitations period should have been equitably tolled . . . as Tran did not raise this argument before the district court . . . ."), *cert. denied*, 542 U.S. 928 (2004).

rule, the movant's delay must have prejudiced the government specifically "*in its ability to respond to the motion*." For purposes of 9(a), it is irrelevant how long Watt waited to file his § 2255 motion. "Mere passage of time alone is never enough to constitute prejudice." *See Rideau v. Whitley*, 237 F.3d 472, 478 (5th Cir. 2000) (citations omitted); *see, e.g., Hannon v. Maschner*, 845 F.2d 1553, 1557 (10th Cir. 1988) (twenty-five years between conviction and petition did not prejudice ability to respond).

As originally promulgated by the Supreme Court in April 1976, Rule 9(a) imposed a rebuttable presumption of prejudice to the government if a defendant filed a petition or motion more than five years after conviction. Congress deleted that language, with the House Judiciary Committee stating, "it is unsound policy to require the defendant to overcome a presumption of prejudice . . . ." H.R. REP. NO. 94-1471, 94th Cong., 2d Sess. (Sept. 2, 1976), *reprinted in* 1976 U.S.C.C.A.N. 2471, 2481 and 1976 WL 13982, at *4-5 (footnote omitted).

The Committee also opined that removing the presumption of prejudice would "bring Rule 9(a) of the Sec. 2255 rules into conformity with the present statute, which permits the filing of an application for a writ of habeas corpus 'at any time.'" *Id.,* 1976 WL 13982 at *5 n.9 (citing 28 U.S.C. § 2255). In so doing, Congress made clear that Rule 9(a) was not a statute of limitations but a discretionary laches provision. *See Buchanon v. Mintzes*, 734 F.2d 274, 283 (6th Cir. 1984) (citing House Report).

For purposes of Rule 9(a), it is also irrelevant whether the delay made it less likely that the state of Tennessee would re-try Watt, or harder for them to convict. *See Vasquez v. Hillery*, 474

U.S. 254, 264-65 (1986); *Rideau*, 237 F.3d at 478 ("Prejudice to the State's ability to retry or reconvict the Petitioner is irrelevant.") (citations omitted); *Smith v. Sec'y of N.M. Dep't of Corrections*, 50 F.3d 801, 821 n.30 (10th Cir. 1995); *accord* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4268.2 (1988 ed., Supp. 2005).

This point is aptly illustrated by *Gratzer v. Mahoney*, 397 F.3d 686 (9th Cir.), *cert. denied*, 126 S.Ct. 168 (2005). A Montana state jury convicted Gratzer of deliberate homicide and aggravated assault in 1982. He appealed to challenge a jury instruction, and the state supreme court affirmed in 1984. *See id.* at 688-89. In 1987, Gratzer filed a federal habeas petition. The district court denied the petition and denied his request for a certificate of probable cause (the predecessor to the COA) in November 1990. In January 1992, Gratzer learned that his request for a COA from the circuit was improperly filed. *See id.* at 689. Gratzer then waited over *eleven years* before filing a proper COA request with the circuit in 2003.

The state of Montana argued that it was prejudiced by Gratzer's delay in bringing the appeal because it was virtually impossible to re-prosecute him for a crime that occurred over twenty years ago. Applying former § 2254 Rule 9(a), the Ninth Circuit rejected the State's argument:

> In pre-AEDPA practice, the equitable doctrine of laches as applicable to habeas petitions was codified in Rule 9(a) of the Rules Governing Section 2254 Cases. . . .
>
> . . . The record reflects a basis for [the State's laches] argument. Nevertheless, the relevant standard is whether the State has been prejudiced in its ability to respond to the issues raised by the petition . . . not in its ability to retry the defendant. *Vasquez v. Hillery*, 474 U.S. 254, 265 . . . (1986). Under pre-AEDPA standards, neither the petitioner's substantial and unwarranted delay in filing the petition nor the difficulty of re-prosecution is dispositive – *only the prejudice to the state in responding to the issues in the petition is material*.

The question is whether Instruction No. 10A violated Gratzer's constitutional rights. The State has not demonstrated that Gratzer's delay in raising this question has prejudiced its ability to respond adequately; the petition will not be dismissed on the basis of laches.

*Gratzer*, 397 F.3d at 690 (emphasis added) (other citations omitted).

This reading of Rule 9(a) is compelled by the clear language of the rule. We have held:

[R]ather than imposing a statute of limitations, the Rule invokes the equitable doctrine of laches. As applied here, the doctrine posits a two-pronged test. First, the state must appear to have been prejudiced *in its ability to respond to petitioner's claims*. Second, the petitioner must be given the opportunity to meet or rebut the apparent prejudice to the state, or to show that whatever prejudice the state has suffered would not have been avoided had the petition been filed earlier.

*Davis v. Adult Parole Auth.*, 610 F.2d 410, 414 (6th Cir. 1979) (emphasis added; footnotes omitted).

Watt's delay in filing his § 2255 motion did not prejudice the government's ability to respond to his motion. His 2001 motion concerns a purely legal issue, whether he is entitled to have his federal sentence redetermined without reference to his vacated state convictions. To resolve that issue, the district court does not need to consult the record or the witnesses in Watt's underlying criminal case in any way. Specifically, the district court need not inquire into the particular facts of Watt's alleged criminal conduct, the circumstances of his arrest or the searches that led to the seizure of evidence, the evidence and testimony presented at trial, the conduct of the prosecution at trial, or the performance of his counsel. *See Bedford v. Ala. Att'y Gen.*, 934 F.2d 295 (11th Cir. 1991) (holding dismissal of delayed petition improper, notwithstanding death of potential witnesses, because plea transcript sufficed to show petitioner was never advised of possible lesser sentence).

Because Watt's delay in filing his 2001 motion did not prejudice the government in its ability to respond to the motion, the first prong of *Davis* is not satisfied, and the inquiry ends. *See Lagway v. Dallman*, 806 F. Supp. 1322, 1345 (N.D. Ohio 1992) ("Petitioner does not have the burden of proving that the state was not prejudiced absent a particularized showing [of prejudice] by respondent."); *Dumas v. Kelly*, 418 F.3d 164, 168 (2d Cir. 2005) ("Because respondent has failed to make a particularized showing of prejudice . . . we need not discuss whether petitioner acted with reasonable diligence"). "Allowing petitions of this age to be considered on the merits may be impolitic, but Congress has clearly determined that, absent demonstrable prejudice" to the government's ability to respond, "such petitions are to be heard. In our judicial role, we must act consistently with Congress's determination." *Buchanon*, 734 F.2d at 283.

Even if the district court erred in dismissing Watt's motion under Rule 9(a), could the court have dismissed under the *common-law* doctrine of laches? No. Under *Lonchar v. Thomas*, 517 U.S. 314 (1996), Rule 9(a) supplants the common-law laches doctrine as applied to § 2255 motions.

In 1987, Lonchar was convicted of murder and sentenced to death, and a state appeals court affirmed his conviction and sentence in 1988. Lonchar and his siblings filed four unsuccessful state habeas petitions, and the appellate process for all of them had concluded by June 1995. *See id.* at 316-18. That same month, seven years after the conclusion of his direct appeal, Lonchar filed a federal habeas petition. The state moved to dismiss on several grounds, including Lonchar's "inequitable conduct" in waiting so long to file. Ultimately, the Eleventh Circuit held that

"equitable doctrines independent of Rule 9" applied, concluding that in the circumstances of the case, "Lonchar does not merit equitable relief." *Id.* at 318-19.

The Supreme Court granted *certiorari* to consider "whether a federal court may, in such circumstances, dismiss a valid first habeas petition for 'equitable reasons' other than reasons listed in federal statutes and rules, or well established in this Court's precedents." *Id.* at 319. The Court reversed, holding that a court may not dismiss a first habeas petition "for special *ad hoc* 'equitable' reasons not encompassed within the frame work of Rule 9." *Id.* at 322. The Court emphasized that as the writ of habeas corpus evolved,

> Congress, the Rule writers, and the courts have developed more complex procedural principles that regularize and thereby narrow the discretion that individual judges can freely exercise. Those principles seek to maintain the courts' freedom to issue the writ, aptly described as the "highest safeguard of liberty" . . . while at the same time avoiding serious, improper, delay, expense, complexity, and interference with a State's interest in the "finality" of its own legal processes. . . . These legal principles are embodied in statutes, rules, precedents, and practices that control the writ's exercise. *Within constitutional constraints they reflect a balancing of objectives (sometimes controversial), which is normally for Congress to make*, but which courts will make when Congress has not resolved the question. . . .
>
> . . . [T]he fact that the writ has been called an "equitable" remedy . . . does not authorize a court to ignore this body of statutes, rules, and precedents. . . .
>
> * * *
>
> [Moreover], a specific federal Habeas Corpus Rule, Rule 9(a), directly addresses the primary factor – delay – that led the Court of Appeals to dismiss the petition for "equitable reasons." . . .
>
> The Rule applies because Lonchar's petition is a "delayed petition." And the language of the Rule requires, as a condition of dismissal, a finding of "prejudice" . . . .

> *[T]he history of the Rule makes plain that the prejudice requirement represents a critical element in the balancing of interests undertaken by Congress and the framers of the Rule which courts may not undermine through the exercise of background equitable powers. . . .*
>
> \* \* \*
>
> We recognize there is considerable debate about whether the present Rule properly balances the relevant competing interests. . . . [But] that debate's focus upon Congress also reveals the institutional inappropriateness of amending the Rule, in effect, through an ad hoc judicial exception, rather than through congressional legislation or through the formal rulemaking process.

*Lonchar*, 517 U.S. at 322-28 (emphasis added) (citations omitted). Thus, whatever courts may think about when a § 2255 motion *should* be dismissed for laches, we must follow Congress's view on the matter (formerly embodied in Rule 9(a), then in 9(a) *and* AEDPA, now in AEDPA alone).

Former § 2255 Rule 9(b) became effective in 1977 and was repealed effective December 1, 2004. Thus, it was in force when Watt filed the instant § 2255 motion. Rule 9(b) provided,

> **Successive Motions.** A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

We review the dismissal of Watt's 2001 motion under Rule 9(b) for abuse of discretion. *See Lonberger v. Marshall*, 808 F.2d 1169, 1173 (6th Cir. 1987) (citation omitted)).

Watt's 1996 motion argued that the district court erred in considering state convictions that were void because the sentences promised and imposed violated state law. After that, it was only the district court's erroneous rulings, and the resultant actions of this court, that prevented him from securing a ruling on the merits of that claim and required him to file another § 2255 motion.

First, we reversed the lower court's dismissal of Watt's 1996 motion as untimely under AEDPA. On remand, the district court denied the 1996 motion again, this time on the mistaken premise that this court had already rejected this same claim on direct appeal. The district court refused to reconsider, stating that it would not consider Watt's challenge to the use of his state convictions until the state courts ruled on his pending state habeas action seeking to void them. Yet after the state court voided Watt's convictions, the district court denied his second reconsideration motion in June 2000 on the ground that he had "failed to convince" the court.

Lastly, when Watt appealed from the denial of his second reconsideration motion, this court, in dismissing the appeal, granted him leave to file a new § 2255 motion. Thereafter, Watt filed a new § 2255 motion in 2001. However, the district court dismissed the 2001 motion as a successive motion, despite the fact that this court granted Watt leave to file it.

In summary, as we ruled in March 2004, "Watt's [2001] § 2255 motion should not be categorized as second or successive because the district court failed to comply with § 2255 when it refused to reconsider its denial of Watt's original § 2255 motion." *Watt*, 96 F. App'x at 289. That holding is the law of the case, and we see no reason to depart from it. *See Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767 (6th Cir.) ("Our power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions.") (citations and quotation marks omitted), *reh'g en banc denied* (6th Cir. Aug. 19, 2004).

Because Watt's 2001 motion is not a successive motion, Rule 9(b) did not apply, and the

district court therefore abused its discretion in dismissing on the ground stated in 9(b).

VII.

Having determined that Watt's 2001 motion was not subject to dismissal under former §

2255 Rules 9(a) or 9(b) or common-law laches, we turn to the district court's ruling on the merits.

In holding that Watt's claim is not cognizable under § 2255, the district court reasoned as follows:

> Movant's 1980 state court convictions were not set aside on constitutional grounds.
> Although Movant argued that his 1980 convictions were unconstitutional [because
> his pleas were not knowing, intelligent and voluntary], he was not successful in
> convincing the Tennessee state court to set aside his convictions on that basis. The
> order setting aside the 1980 convictions did not suggest that Movant's plea was not
> voluntarily and knowingly entered into, that he received ineffective assistance of
> counsel, or that the conviction was in any way unfair to him. Instead, the Tennessee
> state court set aside his convictions because a state law in effect in 1980 (and
> subsequently repealed) precluded concurrent sentencing of certain violent offenders.

> Whether the sentence should have been concurrent or consecutive was a matter of
> state of law and raises no constitutional issue.

> . . . Movant's 1980 convictions were set aside on a technical state law issue, not
> because any important rights of the Movant had been violated. . . . Vacation of
> Movant's 1980 convictions on the ground that the sentence should have been
> consecutive rather than concurrent does not give this Court grounds for reconsidering
> Movant's sentence. Nothing about the Tennessee ruling suggests that Movant's
> 1980 convictions did not properly reflect his guilt or that they should not have been
> used for purposes of sentencing him in 1992 as a career offender.

> This Court understands that § 2255 is a proper vehicle for requesting resentencing
> in those instances where state convictions have been set aside because they are
> constitutionally invalid. Serious questions are implicated when a federal sentence
> is enhanced on the basis of a constitutionally invalid state conviction. However, this
> Court concludes that the vacation of Movant's 1980 convictions does not implicate
> constitutional concerns and is not the type of ruling that requires this Court to

resentence Movant without reference to those prior convictions. Accordingly, this
Court denies Movant's § 2255 [motion] on the merits.

*Watt v. United States*, No. 1:01-CV-331, slip op. at 8-10 (W.D. Mich. Oct. 22, 2004) (citations

omitted). Title 28 U.S.C. § 2255 paragraph 1 provides:

A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed in
violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

A federal prisoner's claim need not arise under the U.S. Constitution or even federal law to

be cognizable under § 2255. That requirement applies only to habeas petitions filed by people in

custody pursuant to a *state* judgment. The statute governing such petitions provides that federal

courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody

pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the*

*Constitution or laws and treaties of the United States.*" 28 U.S.C. § 2254 (emphasis added).

In contrast, § 2255 contains no such restriction. We have emphasized the distinction:

Because 28 U.S.C. § 2255 is "the modern postconviction procedure available to
federal prisoners . . . and therefore offers a wide range of postconviction relief
remedies, the relief available to a state prisoner under 28 U.S.C. § 2254 is narrower
in scope, since it provides only for habeas corpus relief when custody is in violation
of the Constitution, laws, or treaties of the United States."

*Metheny v. Hamby*, 835 F.2d 672, 674 (6th Cir. 1987) (internal citation and quotation marks

omitted).

A nonconstitutional claim – as one might characterize a challenge to the enhancement of a federal sentence based on a void state conviction – is still cognizable under § 2255 "if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Milledge*, 109 F.3d 312, 316 (6th Cir. 1997) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (citation and internal quotation marks omitted)).

The error Watt's § 2255 motion seeks to rectify is not the imposition of the state convictions themselves, but *the district court's consideration* of those void convictions. Under Tennessee law, "when 'the face of the judgment or the record of the underlying proceedings shows that . . . the sentence is illegal, such sentence creates a void judgment . . . .'" *Smith v. Lewis*, No. E2004-01800-CCA-R3-HC, 2005 WL 1269155, at \*5 (Tenn. Crim. App. May 27, 2005) (quoting *McLaney v. Bell*, 59 S.W.3d 90, 91 (Tenn. 2001)). Such a judgment is void *ab initio*; it is as if the judgment never existed: "A void judgment is one which, from its inception, was a complete nullity and without legal effect." *In re James*, 940 F.2d 46, 52 (3d Cir. 1991) (citing *Lubben v. Selective Serv. Sys. Local Bd. No .27*, 453 F.2d 645, 649 (1st Cir. 1972)).[6]

_____

[6]This holding is consistent with the treatment of the void judgment in other courts. *See Butler v. Eaton*, 141 U.S. 240, 243-44 (1891) (because federal judgment complained of was based on an overturned state court decision, Supreme Court reversed the federal judgment and remarked that the reversed state court decision "ought never to have existed"); *Clerke v. Harwood*, 3 U.S. 342, 343 (1797) (decision that was reversed had "become a mere nullity"); *United States v. Williams*, 904 F.2d 7, 8 (7th Cir. 1990) ("a vacated judgment place[s] the parties in the position of no trial having taken place at all"); *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 854-55 (7th Cir. 1974) (refusing to give weight to findings of fact and conclusions of law made by district judge in proceedings that led to the vacated judgment); *Rushton Mining Co. v. Morton*, 520 F.2d 716, 719 (3d Cir. 1975) (vacatur renders order void *ab initio*); *cf. Stone v. Williams*, 970 F.2d 1043, 1054-55 (continued...)

Absent a valid judgment of conviction, the district court may not assume that Watt committed the state crimes charged or require him to prove that he did not commit them. Accordingly, we conclude that it would be a miscarriage of justice to enhance Watt's federal sentence on the basis of state convictions which have been vacated because they were void.

Consistent with *Custis v. United States*, 511 U.S. at 486, we hold that Watt's claim is cognizable under § 2255 now that the state courts have set aside his state convictions. *See also United States v. Steverson*, 230 F.3d 221, 226 n.4 (6th Cir. 2000); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).

## VIII.

In addition to reversing the dismissal of his § 2255 motion, Watt further asks this Court to render an order directly modifying the sentence rather than remanding to the district court to avoid "the waste of judicial resources." We decline this request.

The decision Watt cites in support of his request, *United States v. Smith*, 32 F.3d 194 (5th Cir. 1994), is inapposite. Smith committed drug conspiracy offenses, in violation of 21 U.S.C. § 841, from early 1986 through July 1987. *Id.* at 195. During that period, the sentencing of § 841 offenders was governed by a statute that called for supervised release. The Sentencing Reform Act, which called for special parole instead, did not become effective until November 1, 1987. *Id.* at 195-

---

[6](...continued)
(2d Cir. 1992) (judgment that has been vacated or set aside has no preclusive effect).

96. Nonetheless, the district court erroneously sentenced Smith to a term of special parole. Smith filed a habeas petition, which the district court denied.

The Fifth Circuit reversed and ordered that Smith serve three years of supervised release instead of special parole. The panel reasoned, "[w]e would be wasting judicial resources if we were to vacate Smith's sentence and remand this case for what would *undoubtedly* be the substitution of a three year term of supervised release for the three year term of special parole." *Id.* at 197 (emphasis added).

Here, by contrast, we cannot conclude that Watt's new sentence will "undoubtedly" be of a certain duration. When Watt is resentenced without consideration of the vacated state convictions, the determination of an appropriate sentence is the responsibility of the trial court in the first instance. *Wagstaff v. United States*, 370 F.2d 444, 447 (10th Cir. 1966).

IX**.**

For the foregoing reasons, we reverse and remand for the district court to resentence Watt without consideration of his vacated state convictions.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** I agree generally with the reasoning of the majority opinion and concur in the judgment. I write separately to emphasize the unique nature of this case.

When one examines the convoluted procedural history of this matter, an initial reaction might be that Watt has not been diligent in pursuing relief. Indeed, a strong argument can be made that Watt did not exercise diligence in seeking vacatur of his state court convictions as he waited nearly four years from the time the district court entered judgment before filing his state court habeas petition. However, this lack of diligence is not material to our analysis, as the majority implicitly recognizes.

Diligence becomes relevant under an AEDPA analysis only when the normal AEDPA statute of limitations has run. This was the situation in *Johnson v. United States*, 125 S. Ct. 1571 (2005), in which the Supreme Court held that a petitioner could receive a new limitations period under AEDPA – one year from the vacatur of a state court conviction used to enhance a federal sentence – if the petitioner had exercised "due diligence" in seeking to overturn the state conviction. *Id.* at 1581-82 (citing 28 U.S.C. § 2255, ¶ 6(4)). Unlike the petitioner in *Johnson*, Watt did not require a new limitations period for his claim to be timely. He filed his initial petition in May 1996, one month after AEDPA's effective date and within the one-year "grace period." *See id*. at 1576 (taking judicial notice of the one-year "grace period" for AEDPA claims supplied by the Courts of Appeals). Thus, Watt's lack of diligence is not relevant to the outcome of this case. And this court's decision to grant Watt permission to file a new § 2255 motion in 2001 (as opposed to simply ruling on his appeal), even if incorrect, does not render Watt's

petition untimely.  Thus, despite the extraordinary delay and lack of diligence on the part of the

petitioner in this case, I see no alternative for resolution of this case, other than that reflected in

the majority opinion.