**In re Jeffrey Andrew SLOCOMBE, Debtor.**

**Colleen Olson, Plaintiff,**

**v.**

**Jeffrey Andrew Slocombe, Defendant.**

**Bankruptcy No. SL 04–04778.
Adversary No. 05–80332.**

United States Bankruptcy Court, W.D. Michigan.

June 29, 2006.

Jeffrey Andrew Slocombe, Traverse City, MI, pro se.

## OPINION

JO ANN C. STEVENSON, Chief Judge.

The principal issue before this court is whether the actions of Debtor, Jeffrey A. Slocombe are egregious enough to constitute grounds for denial of his discharge pursuant to 11 U.S.C. § 727(a)(4)(D).

Presented in this adversary proceeding are claims that arise in a case referred to this court by the Standing Order of Reference entered by the United States District Court for the Western District of Michigan on July 24, 1984. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Accordingly, the bankruptcy court is authorized to enter a final judgment subject to the appeal rights afforded by 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001 et seq.

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. In reaching its determinations, this court has considered the demeanor and credibility of all witnesses who testified, the exhibits properly admitted into evidence, and the parties' trial briefs and closing arguments.

### HISTORY

For 10 years beginning in 1994, Jeffrey A. Slocombe (Slocombe or Debtor) has

been the attorney of record in approximately 182 bankruptcy cases. On April 3, 1998, Slocombe filed his own Chapter 7 bankruptcy, Case No. 98–02965, before the Honorable Jeffrey R. Hughes. He received a discharge on October 26, 1998.

On September 12, 2002, Slocombe filed another Chapter 7 bankruptcy petition, Case No. 02–10147, but Judge Hughes denied Slocombe a discharge in accordance with 11 U.S.C. § 727(a)(8) because the requisite six years had not passed.

Six years and eleven days after his 1998 filing, Slocombe filed the present Chapter 7 bankruptcy case. Chapter 7 Bankruptcy Trustee, Colleen Olson (Trustee) was assigned the case. The first meeting of creditors was scheduled for June 10, 2004, but was later adjourned to July 6, 2004.

Slocombe appeared on July 6, 2004, but the meeting was continued until July 28, 2004 in order for Slocombe to produce certain documents.

After waiting several weeks for Slocombe to produce the required documents, the Trustee filed a Motion to Compel Cooperation from the Debtor and Turnover of Accounts Receivable (First Motion to Compel). The court granted this Motion on November 10, 2004, and required the Debtor to turnover certain items including accounts receivable information and UCC equipment filings (First Order to Compel).

In response to the First Order to Compel, the Debtor provided a list of accounts receivables that consisted only of last names and amounts due and a UCC–1 statement which did not match the names of the security holders listed on Debtor's schedules.

As a result, the Trustee sent a letter to Slocombe requesting further information and documents from him. Specifically, the Trustee requested more information regarding the security interest in office equipment as well as the full names and addresses of people listed in the accounts receivable aging summary (November 17 Letter). The Debtor never responded.

After sending the Debtor another letter (February 9 Letter) requesting the same information and receiving no reply, the Trustee filed another Motion to Compel Cooperation from the Debtor and Turnover of Assets (Second Motion to Compel). This Motion was granted by the court on May 25, 2005. It required the Debtor to turn over the information within 14 days (Second Order to Compel).

Slocombe failed to abide by the Second Order to Compel, and a Motion for Contempt was filed by the Trustee. The Motion for Contempt was granted by the court along with an Order for Apprehension on September 6, 2005 (Apprehension Order). In the Apprehension Order, Slocombe was required to provide the Trustee with the requested documents within 14 days. He complied with the Apprehension Order approximately one week later by providing the necessary information in fits and starts over a period of four days.

On October 19, 2005, Debtor amended his bankruptcy petition to include the corrected amount of the account receivables and the name of the secured creditor who held an interest in equipment. In the meantime, the Trustee had filed a Complaint to Object to Debtor's Discharge (Objection to Discharge) pursuant to 11 U.S.C. § 727(a)(4)(D).

Trial on the Objection to Discharge commenced on April 28, 2006. Unbeknownst to anyone but Slocombe, on April 21, 2006, a fourth personal bankruptcy case, Case No. 06–01764, was filed, this time under Chapter 13. The Trustee has filed an Objection to Debtor's Chapter 13 based on bad faith.

## SLOCOMBE'S DEFENSE

At the April 28, 2006 hearing on the Objection to Discharge, Slocombe emphasized that he obeyed the First Order to Compel by providing the accounts receivable aging report and a copy of the UCC–1 financing statement. He could not comply beyond the First Order to Compel however, because he had turned over all his account receivable files in late 2003 or early 2004, to Servco Credit Company (Servco) in Traverse City, Michigan.

Slocombe explained his law firm's business practice. If there was an amount due and owing at the end of a case, Slocombe would simply close the file and toss it in a separate bin. He never made a list of closed files or kept track of them in any way.

At some point prior to his bankruptcy filing in 2004, Slocombe took all the closed files over to Servco, and with no written contract or record of the files, handed them over for collection. Slocombe claims he made an oral agreement with Servco that all proceeds collected would be split 50/50. He claims he never received any money as a result of Servco's collection efforts.

This, however, did not stop Servco from believing Slocombe owed it money. Apparently, if during the collection efforts one of Slocombe's clients said they paid the account, or Slocombe agreed to write off the debt, Servco would bill Slocombe for its 50% share. This was based on the apparent belief that time and energy had been expended trying to collect the bill and payment was due.

Consequently, when Slocombe requested the files in order to comply with the Second Order to Compel, Servco refused. Once Slocombe was served with the Apprehension Order, he physically, and by force, removed the files from Servco's office and turned them over to the Trustee.

Unfortunately, Slocombe could not produce any evidence whatsoever to substantiate his dealings with Servco.

Slocombe originally thought that he told the Trustee about his troubles with Servco in a letter dated September 2, 2004. However, upon closer examination, Slocombe admitted that he failed to mention in the letter that his files were at Servco. Although he maintains that he mentioned Servco to the Trustee verbally sometime in the Fall of 2004, he admitted that the first time Servco was mentioned in writing was in his Answer to the Objection to Discharge filed on April 25, 2005—one year after the filing of his bankruptcy.

Additionally, Slocombe argued that the files which made up the accounts receivable were so old that the ability to collect them was highly questionable. Consequently, he did not view them as an asset. He believes that he cooperated to the best of his ability, turning over all appropriate, necessary and relevant documents, and certainly never intentionally withheld information from the Trustee.

## LAW

This is a case of first impression, there being no cases dealing solely with this issue. There are cases where 11 U.S.C. § 727(a)(4)(D) has been pled in conjunction with the concealment or fraudulent transfer of assets pursuant to 11 U.S.C. § 727(a)(2), failure to keep books and records pursuant to 11 U.S.C. § 727(a)(3), or other grounds for discharge denial pursuant to § 727(a)(5) or (6). Even in these cases however, the analysis of 11 U.S.C. § 727(a)(4)(D) is scant.

11 U.S.C. § 727(a)(4)(D) states:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

■ Consequently, the party objecting to discharge under 11 U.S.C. § 727(a)(4)(D) has the initial burden of proving that: 1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; 2) was in connection with a case; 3) was withheld from an officer of the estate entitled to possession; 4) was done knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs.

■ Once the Trustee meets this initial burden, the Debtor must bring forth enough credible evidence to dissuade the court from exercising its discretion to deny debtor's discharge based upon the evidence presented by the objecting party. Fed. R. Bankr.P. 4005; *Grant et al. v. Sadler (In re Sadler)*, 282 B.R. 254 (Bankr.M.D.Fla.2002).

Based upon the court file, the Trustee's testimony and the exhibits admitted at trial, we find the Trustee has met her burden. The Debtor does not dispute that documents were withheld from an officer of the estate entitled to possession in connection with a case that related to the Debtor's property or financial affairs.

The disagreement in this case seems to center around the other two requisite elements, that is, whether the documents were being withheld by the Debtor or someone for whom the Debtor was legally responsible and whether the documents

were being withheld knowingly and fraudulently.

### DISCUSSION

■ One of the primary goals of the pre-October 17, 2005 Bankruptcy Code was to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh from obligations and responsibilities that resulted from business misfortunes. *Williams v. United States Fidelity & Guaranty Company*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

Although bankruptcy offers certain advantages, it also exacts a price. In order to avail oneself of the protections and the benefits of the Bankruptcy Code, providing comprehensive, accurate, detailed and relevant records to the Trustee is a small but necessary price to pay for the safeguard and shelter offered by the automatic stay.

■ The purpose and intent of § 727 is to make the privilege of discharge dependent upon a true presentation of financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to disclose his entire business, not just a fraction thereof. *Office of the Comptroller General of the Republic of Bolivia v. Tractman*, 107 B.R. 24 (S.D.N.Y.1989).

Full disclosure provides the trustee and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs. It allows comparison between the information disclosed with that provided on the bankruptcy petition. It also ensures that the trustee and creditors are supplied with dependable data on which they can rely in tracing debtor's financial history.

The standard for disclosure by a debtor under the Bankruptcy Act was delineated in *In re Underhill*, 82 F.2d 258 (2d Cir.

1936) *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). This standard still applies today. See *Reynolds v. Miller (In re Miller),* 97 B.R. 760, 763 (Bankr. S.D.N.Y.1989) (*Underhill* established a standard for record keeping which still applies); *Chaudhry v. Usoskin (In re Usoskin),* 56 B.R. 805, 815 (Bankr. E.D.N.Y.1985) (*Underhill* is an opinion which neither time nor the Code has in any way devitalized).

■ In *Underhill,* the court emphasized that what constituted sufficient record keeping varied with the facts of each case, but in all cases complete disclosure was required. "It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge ..." *Id.* at 260.

■ Also relevant to the "particular circumstances" of each case is the sophistication of the debtor and the extent of his activities. As an experienced bankruptcy attorney, Slocombe is not an unsophisticated party. He knows he must disclose complete records which would aid in the analysis of his bankruptcy case. He is a knowledgeable business and professional person who understands the purpose behind the disclosure requirements. Consequently, as a debtor he is held to a higher level of accountability and to those standards of disclosure ordinarily exercised by members of his profession.

## WITHHOLDING OF DOCUMENTS

■ Throughout the course of this bankruptcy, Slocombe claims that Servco had possession of the documents required by the Trustee. Having no legal control over Servco, Slocombe was not in a position to pass the accounts receivable files or even a complete list of the accounts on to the Trustee.

However, Slocombe makes these claims with no corroborating evidence whatsoever. According to Slocombe, there was no written contract with Servco, no list of accounts receivable retained for his own records, and no affidavit or testimony from anyone at Servco.

Even if Slocombe's version of the facts are true, we still find him responsible for the non-disclosure of information. Although Servco may have had physical control of the records, it was Slocombe who withheld them. The failure to tell the Trustee the location of the requested business records was tantamount to physical control.

In addition, if in fact Servco had a legal right to the records, of which there is absolutely no proof, the Trustee had at her disposal, certain legal tools to wrest the files from Servco. Instead, Slocombe unilaterally determined that the account receivable records were of little value and therefore chose not to shard their location with the Trustee. This was not his decision to make. Only when faced with the prospect of being arrested did Slocombe relent and obtain the files by force. This would have been unnecessary had he told the Trustee or her attorney a year earlier where they could be found.

In any case, Slocombe has failed to carry the burden imposed upon him by bringing forward enough credible evidence to support his claim.

## KNOWING AND FRAUDULENT INTENT

Slocombe's primary contention is that his failure to disclose the detailed accounts receivable lists and other documents was not fraudulent within the meaning of 11 U.S.C. § 727(a)(4). Slocombe contends that the non-disclosures were merely the result of inadvertence and impossibility.

■ The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because ordinarily, the debtor is the only person able to testify directly concerning his intent and he is quite unlikely to state that his intent was fraudulent. *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 252 (4th Cir. 1987). Therefore, fraudulent intent may be deduced from the facts and circumstances of the case. *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985).

■ In addition, reckless indifference to the truth has been held to be the equivalent of fraud under § 727. See *In the Matter of Beaubouef*, 966 F.2d 174 (5th Cir.1992); *March v. Sanders (In re Sanders)*, 128 B.R. 963 (Bankr.W.D.La.1991).

■ Several facts and circumstances support the conclusion that Slocombe acted knowingly and fraudulently or at least with reckless indifference in withholding information from the Trustee. First, as already noted, Slocombe is an experienced attorney and bankruptcy practitioner. He is fully aware that those who seek the shelter of the bankruptcy code must provide complete and reliable information to the Trustee. In addition, he had personally been through the bankruptcy process once, having successfully received a discharge.

The Trustee continuously and consistently requested the same information from Slocombe several different times throughout this bankruptcy case. She never wavered. Why Slocombe chose not to turnover these documents, or release the location of their whereabouts with one phone call at the beginning of the case, instead of a year later in a formal pleading after two Motions to Compel, one Motion for Contempt and an Apprehension Order,

is known only to him. But his steadfast refusal to convey the information can and is construed by this court as a reckless indifference and a knowing refusal to cooperate with the Trustee and her need for the information.

Another circumstance that shows a reckless regard for the truth is Slocombe's Chapter 13 bankruptcy filed just seven days before trial. This too, was not disclosed to the Trustee by Slocombe, or brought to the court's attention at the hearing on the Objection to Discharge.[1] There comes a point at which omissions are not accidents and we have reached this point.

Slocombe's non-disclosure of material facts and information appears to this court to be more than an inadvertency; it is a conscious pattern of behavior, one that appears to have as its motivation an abuse of the bankruptcy system.

---

1. In her Objection to Debtor's Chapter 13, ¶ 6, the Chapter 7 Trustee states she had no knowledge of the Chapter 13 filing before the Objection to Discharge hearing.