RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: M.T.G., INC.,

*Debtor.*

─────────────────────────────────────────────

GUY C. VINING, Trustee for M.T.G., Inc.,

*Appellant,*

*v.*

CHARLES J. TAUNT & ASSOCIATES, P.C., 22-12661 and consolidated from 22-12769; AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, 22-12661 and consolidated from 23-10048; COMERICA BANK, INC., 22-12661 and consolidated from 22-12661 and 23-10048; PLUNKETT COONEY, P.C., 22-12661 and consolidated from 22-12769 and 23-10048; GARAN LUCOW MILLER, P.C., consolidated from 23-10048; CHERI L. TAUNT, Personal Representative for the Probate Estate of Charles J. Taunt,

*Appellees.*

No. 24-1979

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
No. 2:22-cv-12661—Terrence George Berg, District Judge.

─────────────────

United States Bankruptcy Court for the Eastern District of Michigan at Detroit;
No. 2:95-bk-48268—Thomas J. Tucker, Bankruptcy Judge.

Argued:  October 23, 2025

Decided and Filed:  January 14, 2026

Before:  KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Guy C. Vining, VINING LAW GROUP, PLC, Taylor, Michigan, in pro per. Courtney A. Krause, GARAN LUCOW MILLER, PC, Detroit, Michigan, for Appellees Charles J. Taunt & Associates, P.C. and Cheri L. Taunt. Jeffrey M. Frank, MADDIN HAUSER ROTH & HELLER, PC, Southfield, Michigan, for Appellee American Casualty Company. Joseph J. Shannon, BODMAN, Detroit, Michigan, for Appellee Comerica Bank. Trent B. Collier, COLLINS EINHORN FARRELL PC, Southfield, Michigan, for Appellee Plunkett Cooney, P.C. **ON BRIEF:** Guy C. Vining, VINING LAW GROUP, PLC, Taylor, Michigan, Barbara D. Urlaub, MORGAN & JONES, PLLC, Farmington Hills, Michigan, for Appellant. Courtney A. Krause, GARAN LUCOW MILLER, PC, Detroit, Michigan, for Appellees Charles J. Taunt & Associates, P.C. and Cheri L. Taunt. Jeffrey M. Frank, David M. Eisenberg, MADDIN HAUSER ROTH & HELLER, PC, Southfield, Michigan, for Appellee American Casualty Company. Joseph J. Shannon, BODMAN, Detroit, Michigan, for Appellee Comerica Bank. Trent B. Collier, COLLINS EINHORN FARRELL PC, Southfield, Michigan, for Appellee Plunkett Cooney, P.C.

---

**OPINION**

---

BLOOMEKATZ, Circuit Judge. This appeal arises out of debtor MTG's decades-long Chapter 7 bankruptcy proceedings. The original trustee, Charles Taunt, failed to disclose a conflict of interest involving the largest secured creditor, Comerica Bank. The successor trustee, Guy Vining, now seeks to unwind various actions taken during Taunt's tenure. He alleges that Comerica committed, or is vicariously liable for, fraud on the court based on Taunt's nondisclosure; that several post-petition transfers of estate property are avoidable under 11 U.S.C. § 549(a); and that Taunt, Taunt's former law firm Plunkett Cooney, and Comerica, are liable for conversion of estate assets. The bankruptcy court granted summary judgment to the defendants on nearly all these claims, and the district court affirmed. We do the same.

**BACKGROUND**

This case has a long and complex history. To provide the relevant background for our decision today, we begin by briefly recounting the underlying conduct that gave rise to the

parties' dispute and the first round of litigation.  Then we detail the current proceeding, focusing on the claims that give rise to this appeal.

## I.      Original Bankruptcy Proceeding

MTG designed and built tooling for the auto industry.  In 1995, MTG filed for Chapter 11 bankruptcy relief.  The case was converted to a Chapter 7 proceeding the following year.  Prior to the appointment of a Chapter 7 trustee, American Casualty issued a $1,000,000 bond that protected the MTG estate (and its creditors) against certain losses caused by a trustee's negligence, mismanagement, or fraud.

The bankruptcy court appointed Charles Taunt as the Chapter 7 trustee of the bankruptcy estate.  As trustee, Taunt acted as the legal representative of the estate, owing fiduciary duties to the bankruptcy court and the parties, and broader responsibilities to uphold the integrity of the bankruptcy system.  *In re Steele*, 26 B.R. 233, 234 (Bankr. W.D. Ky. 1982).  In carrying out these obligations, Taunt's job was to marshal and sell the MTG estate's assets for the benefit of its creditors.  *See* 11 U.S.C. § 704(a)(1); *In re Motorwerks, Inc.*, 371 B.R. 281, 290 (Bankr. S.D. Ohio 2007).  With this role, the bankruptcy court relied on Taunt's representations to understand the estate's financial circumstances.  *See In re Slocombe*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).  In connection with his appointment, Taunt filed a "Verified Statement of Disinterest for Trustee to Employ Counsel" that attested his law firm, Charles J. Taunt & Associates, was disinterested in the estate's assets and both Taunt and his firm could act as counsel to Taunt in his role as the trustee.

Shortly thereafter, Taunt entered into a fee agreement with Comerica.  Because Comerica was MTG's primary lender and largest secured creditor, the agreement raised a potential conflict of interest.  The agreement let Taunt cover certain expenses using funds from the property securing Comerica's loan, as permitted by 11 U.S.C. § 506(c).  But it also specified that Comerica would pay Taunt to review and analyze its claim against the estate.  So, in addition to working on behalf of the estate, Taunt was also working on behalf of another party in the proceeding (Comerica) that was seeking money from the estate.  Bankruptcy Rule 2014(a) requires trustees to file a verified statement describing "any" connections to the estate's

creditors. Fed. R. Bankr. P. 2014(a)(3). Taunt filed this verification twice; once upon his appointment and then after his law firm merged with Plunkett Cooney. He failed to disclose his fee agreement with Comerica both times.[1]

Before the bankruptcy court learned about the full scope of Taunt's fee agreement with Comerica, he obtained several orders that benefitted Comerica. These orders (collectively, the "Comerica Orders") included: (1) the Comerica Claim Allowance Order—which allowed Comerica's $5.3 million secured claim and determined that Comerica had "a valid and properly perfected security interest in and lien on all property of [MTG's] estate," 2007 Bankr. Ct. Op., R. 28-8, PageID 11497 (quoting the order); (2) the Comerica Relief from Stay Order—which granted Comerica relief from the court-ordered stay that automatically prevents most creditors from collecting debts or seizing property once a bankruptcy case is filed; and (3) the Comerica Settlement Order—which settled the estate's pre-petition lender liability claims (that is, MTG's claims against Comerica that arose before MTG filed for bankruptcy) for $10,000.

## II.     Initial Fraud on the Court Litigation

Litigation over Taunt's potential conflict of interest began less than two years after the bankruptcy court issued the Comerica Orders. After Taunt disbursed the overwhelming majority of the estate's assets, he requested approval from the bankruptcy court to use the estate's remaining assets to pay his own fees and then remit the balance to Comerica. Todd Halbert, MTG's attorney, objected to Taunt's motion. He argued that MTG's pre-petition lender liability claims barred Comerica from asserting a valid interest in the estate's remaining assets. Although Halbert conceded that the $10,000 Comerica Settlement Order covered those claims, he maintained the settlement lacked consideration and later contended that the order itself was a product of fraud on the court and should therefore be set aside. The United States Trustee, which oversees the administration of bankruptcy cases, investigated Halbert's claims and concluded that Taunt and Plunkett Cooney had a duty to disclose Taunt's fee agreement with Comerica to the bankruptcy court under Rule 2014. *In re M.T.G., Inc.*, 366 B.R. 730, 741 (Bankr. E.D. Mich.

---

[1]Taunt began negotiations with Comerica the day after he was appointed as the estate's trustee. Taunt did not disclose these negotiations to the bankruptcy court in his first "Verified Statement of Disinterest for Trustee to Employ Counsel."

2007) [hereinafter *In re MTG I*], *aff'd*, 400 B.R. 558 (E.D. Mich. 2009). Based on the U.S. Trustee's investigation, and on appeal from the bankruptcy court, the district court held that the fee agreement created a "serious, egregious conflict of interest and breach of fiduciary duty." *Id.* at 751 (quoting the district court hearing). The district court thus disqualified Taunt as the Chapter 7 trustee and denied his firm all fees. The bankruptcy court then appointed Guy Vining as the estate's trustee.

Even though Taunt's disqualification ended his service as trustee, it did not resolve whether his earlier conduct gave rise to any personal liability or entitled the estate to relief. In 2007, the bankruptcy court held that Taunt and his attorneys (then Plunkett Cooney) had in fact "committed fraud on the court, by failing to properly disclose [the Comerica Fee Agreement], and then obtaining [the Comerica Orders] from the Court that benefitted Comerica." *Id.* at 732. On that basis, the bankruptcy court vacated the Comerica Orders. *Id.* at 758.

## III.    Current Adversary Proceeding

After vacating the Comerica Orders, the bankruptcy court explained that multiple issues that Vining had raised would need to be resolved in an adversary proceeding, including Vining's allegations of conspiracy by Taunt and Comerica, potential violations of state and federal law, and Vining's entitlement to damages and fees. *See id.* at 756–58. At the same time, however, the bankruptcy court cautioned against further litigation, remarking that it was "far from clear" that Vining's continued pursuit of these claims would benefit the estate and its creditors. *Id.* at 757–58.

Regardless, Vining filed a 21-count complaint against, in relevant part, Taunt, Plunkett Cooney, Comerica, and American Casualty. Vining's claims fell into two categories. The first category, the pre-petition claims, consisted of MTG's claims against Comerica that arose before MTG filed for bankruptcy. Those claims concerned alleged misconduct that forced MTG to go out of business. They are not on appeal, so we do not discuss them further. The second category, the post-petition claims, encompassed the estate's claims against Taunt, Plunkett Cooney, and Comerica that arose after MTG filed for bankruptcy. Those claims all related to Taunt's nondisclosure of the Comerica fee agreement, and some are at issue in this appeal.

After years of discovery disputes, the parties filed cross-motions for summary judgment. The bankruptcy court held oral arguments on the motions for eight days.  It then took six years to write a 408-page opinion, which granted summary judgment to Vining in part, but largely granted summary judgment to the defendants on Vining's post-petition claims.

Three of the claims are the subject of this appeal.

*First*, the bankruptcy court affirmed its prior finding that Taunt and Plunkett Cooney had committed fraud on the court.  But it held that Comerica had not.  The bankruptcy court reasoned that "the duty to disclose the Comerica Fee Agreement was a duty owed by Taunt, as the Chapter 7 trustee."  2022 Bankr. Ct. Op., R. 20-18, PageID 4716 (quoting *In re MTG I*, 366 B.R. at 757). It reasoned that bankruptcy law placed no similar duty on Comerica.  Because of the "inherent value" in exposing fraud on the court, the bankruptcy court awarded Vining limited attorney's fees for his work pursing this claim against Taunt, and it determined that American Casualty's bond would cover that liability.[2]  *Id.* at 4739–40.  It declined, however, to award Vining full attorney's fees, compensatory damages, or punitive damages.

*Second*, the bankruptcy court rejected Vining's avoidance claim.  Vining claimed that certain post-petition transfers Taunt had arranged were avoidable under 11 U.S.C. § 549(a) because they were voided ab initio when Taunt was disqualified and the bankruptcy court vacated the Comerica Orders.  The bankruptcy court disagreed, explaining that all the post-petition transfers Vining sought to avoid were authorized by valid court orders at the time of transfer, and therefore did not qualify for avoidance under the statute.

*Third*, the bankruptcy court denied Vining's conversion claim.  Vining brought a common law and statutory conversion claim against Taunt, Plunkett Cooney, and Comerica, arguing that Taunt's conflict of interest disqualified him from acting as the bankruptcy trustee, and, as a result, any "dominion or control" that Taunt exercised over the estate's property was

---

[2]As Taunt's surety, American Casualty is entitled to assert the same arguments as Taunt.  *See Ackron Contracting Co. v. Oakland County*, 310 N.W.2d 874, 876 (Mich. Ct. App. 1981).  Because American Casualty has adopted Taunt's arguments that the bankruptcy court did not abuse its discretion by declining to award full attorney's fees, additional compensatory, or punitive damages, we refer only to Taunt throughout the rest of this opinion.

not authorized and "wrongful." 2022 Bankr. Ct. Op., R. 20-18, PageID 4813. The bankruptcy court disagreed because Taunt was the Chapter 7 trustee during these transactions, and thus had the authority to administer the estate's property and did not unlawfully convert it.

Taking a broader view, the bankruptcy court concluded that "the estate suffered no injury because of anything Taunt or his attorneys did or failed to do during the nearly five years that Taunt was the Chapter 7 Trustee." *Id.* at PageID 4725. On the contrary, the bankruptcy court surmised that because the pre-petition claims against Comerica were "worth nothing," the Comerica Settlement Order (which settled MTG's lender liability claims against Comerica in exchange for $10,000), benefited the estate. *Id.*

Nonetheless, Vining appealed the bankruptcy court's order. The district court affirmed the bankruptcy court's decision on all the challenged claims, and—despite the bankruptcy court's admonition that this litigation is not in the estate's best interest—Vining now pursues this appeal too.

## ANALYSIS

In this appeal, Vining pursues three main arguments. *First*, that the bankruptcy court erred in holding that Comerica was not liable for fraud on the court and that the bankruptcy court abused its discretion in awarding only limited attorney's fees. *Second*, that the bankruptcy court should have held that the post-petition transfers were avoidable. *Third*, that the bankruptcy court erroneously dismissed his conversion claims. We consider each issue in turn. In doing so, we afford the deference we usually give to the district court to the bankruptcy court. *In re Morris*, 260 F.3d 654, 662 (6th Cir. 2001); *Hancock v. McDermott*, 646 F.3d 356, 359 n.1 (6th Cir. 2011). That means we review the bankruptcy court's findings of fact for clear error, its conclusions of law de novo, and its award of damages for an abuse of discretion. *In re McDonald*, 29 F.4th 817, 822 (6th Cir. 2022); *In re Fashion Shop of Ky., Inc.*, 350 F. App'x 24, 27 (6th Cir. 2009). As detailed below, we uphold the bankruptcy court's ruling on each of the challenged issues.

## I.　　Fraud on the Court Claim

Although the bankruptcy court concluded that Taunt, and his law firm Plunkett Cooney, were liable for fraud on the court, it held that Comerica was not.  *In re MTG I*, 366 B.R. at 748–49, 756–57.  In this appeal, Vining argues that Comerica should not have been let off the hook and that the court should have awarded more severe damages for Taunt's fraud.  We disagree and hold that Comerica is not liable—either directly or vicariously—for fraud on the court and we affirm the district court's limited damages award.

Fraud on the court consists of "only that species of fraud which does or attempts to defile the court itself . . . so the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases."  *Buell v. Anderson*, 48 F. App'x 491, 499 (6th Cir. 2002) (cleaned up).  To establish that Comerica committed fraud on the court, Vining must show there was conduct: (1) by "an officer of the court"; (2) that was "directed to the 'judicial machinery' itself"; (3) that was "intentionally false, willfully blind to the truth, or [was] in reckless disregard for the truth"; (4) that was "a positive averment or [was] concealment when one [was] under a duty to disclose"; and (5) that "deceive[d] the court."  *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).  Vining has the burden of proving the existence of fraud on the court by "clear and convincing evidence."  *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009).[3]

### A.  Direct Liability

We begin by rejecting Vining's argument that Comerica is directly liable for fraud on the court.  As the bankruptcy court explained, Comerica is not directly liable because only an "officer of the court" can commit fraud on the court and, in this proceeding, Comerica itself is not an officer of the court.  *See Okros v. Angelo Iafrate Constr. Co.*, 298 F. App'x 419, 427 (6th Cir. 2008); *see also In re Michelson*, 141 B.R. 715, 726 (Bankr. E.D. Cal. 1992) (explaining that "participation by an officer of the court elevates garden-variety fraud into fraud on the court").

---

[3]Our discussion of the requirements for "fraud on the court" should not be read to foreclose the bankruptcy court's discretion to sanction for misleading or unethical conduct in manners outside of a finding of fraud on the court.  *See In re Jemsek Clinic, P.A.*, 850 F.3d 150, 156 (4th Cir. 2017).

Although we have not had occasion to elucidate a comprehensive definition for an officer of the court, we have previously held that attorneys and bankruptcy trustees fall into that category. *See, e.g.*, *Demjanjuk*, 10 F.3d at 352 (attorney); *Comput. Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 338 (6th Cir. 2006) (attorney); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (bankruptcy trustee). Attorneys and trustees are both officers of the court because they occupy positions that "demand[] integrity and honest dealing with the court" beyond that of any private party. *Demjanjuk*, 10 F.3d at 352 (quotation omitted). Taunt was thus an officer of the court both as the Chapter 7 trustee and as counsel to the trustee. *In re MTG I*, 366 B.R. at 566. The latter was also true for Charles J. Taunt & Associates, and its successor, Plunkett Cooney. *Id.* In addition to attorneys and trustees, there may be other categories of officials that similarly have heightened duties of integrity and honesty with the court, but we need not resolve the full scope of "officers of the court" to resolve this case.

Unlike Taunt and his law firms, Comerica was neither a trustee nor an attorney and Vining did not argue that Comerica had a greater duty to the court than any other private party involved in a bankruptcy court proceeding. *Cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 n.8 (2d Cir. 1993) ("The creditor acts in his own interest and in general owes no [fiduciary] duty to any other party."). Since acting as an officer is a prerequisite for committing fraud on the court, Comerica cannot be held directly liable.

**B.  Vicarious Liability**

Comerica is also not vicariously liable for fraud on the court. We apply Michigan law when evaluating Vining's vicarious liability claim against Comerica. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). To prevail under a theory of vicarious liability, Vining needs to demonstrate that Comerica is indirectly responsible for another's actions via a principal-agent relationship. *Theophelis v. Lansing Gen. Hosp.*, 424 N.W.2d 478, 483 (Mich. 1988); *see Rogers v. J.B. Hunt Transp., Inc.*, 649 N.W.2d 23, 26 (Mich. 2002). Comerica can be liable for harms inflicted by its agent's misconduct even if it did not itself act unlawfully. *Bailey v. Schaaf*, 852 N.W.2d 180, 193 (Mich. Ct. App. 2014), *vacated in part on other grounds*, 856 N.W.2d 692 (Mich. 2014) (mem.); *Al-Shimmari v. Detroit Med. Ctr.*,

731 N.W.2d 29, 36 (Mich. 2007).  But Vining cannot hold Comerica liable if its agent is not itself liable for the alleged wrongdoing.  *See Lincoln v. Gupta*, 370 N.W.2d 312, 316 (Mich. Ct. App. 1985).

Vining advances two theories of vicarious liability.  We are not persuaded by either.

*First*, Vining argues that Taunt's fee agreement with Comerica created an agency relationship, making Comerica responsible for Taunt's fraud on the court.  But no such principal-agent relationship existed between Comerica and Taunt in these bankruptcy proceedings.  A principal-agent relationship exists where "one person acts for or represents another."  *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998) (quotation omitted).  Michigan courts look to "the relations of the parties as they in fact exist under their agreements or acts" to determine whether parties have created an agency relationship.  *Id.* (quotation omitted).  For an agency relationship to form, the agreements or acts of the parties must demonstrate that the principal—Comerica—had the "right to control the conduct of the agent," *id.*,—Taunt—including the right to specify not just what the agent does, but how the agent does it.  *See Holbrook v. Olympia Hotel Co.*, 166 N.W. 876, 877–78 (Mich. 1918).  Whether Comerica exerted this level of control over Taunt is a question of fact that we review for clear error.  *St. Clair Intermediate Sch. Dist.*, 581 N.W.2d at 716.

Vining has not demonstrated that Comerica had the right to control Taunt.  To prove control, Vining cites Comerica General Counsel's statement that Comerica "actively and intentionally" used the fee agreement "to gain advantageous treatment or exert influence" over Taunt.  Hertzberg Depo. Tr., R. 27-36, PageID 6471.  The text of the fee agreement and subsequent events suggest otherwise.  For example, the agreement provided that Taunt would "Inspect/Secure Premises," including changing locks; shutting down business operations; inspecting real property, machinery, and equipment; securing business records; and providing landlords access to premises.  Comerica Fee Agmt., R. 30-15, PageID 12988.  But the agreement did not dictate *how* Taunt would conduct any of those tasks.  He retained that discretion.  The agreement also provided Taunt would "[r]eview claims for payment against Becker Group," one of MTG's suppliers.  *Id.*  But it did not require a specific outcome; Taunt independently chose

the methodology he used to evaluate the Becker Group's claims. Taunt also negotiated with the Becker Group and settled MTG's claims against them, contrary to Comerica's wishes. Because the bankruptcy court did not clearly err in concluding that Comerica did not have the "right to control" Taunt under the Comerica Fee Agreement, there was no agency relationship between the two parties. And so Vining's first theory of vicarious liability fails.

*Second*, Vining contends that Comerica's attorneys committed fraud on the court and that their liability can be imputed to Comerica. Recall that fraud on the court encompasses only conduct that is "directed to the judicial machinery itself" and that "directly corrupt[s]" the court's impartial functions. *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (quotation omitted); *see also Mazzei v. The Money Store*, 62 F.4th 88, 93 (2d Cir. 2023). Taunt's failure to disclose the fee agreement satisfied that standard because, as trustee, he owed fiduciary and statutory duties of candor to the bankruptcy court. The bankruptcy court, in turn, relied on his impartial assessment of the estate's financial condition. But by failing to disclose the fee agreement from the bankruptcy court, Taunt concealed a conflict of interest that undermined his impartiality and therefore impaired the court's ability to operate as a neutral arbiter. *In re MTG I*, 366 B.R. at 748–49. Comerica's attorneys, however, bore no comparable duty to the court under Rule 2014 and for that reason, the rationale supporting fraud-on-the-court liability for Taunt does not extend to them. *Id.* at 756–57. Moreover, the bankruptcy court concluded that even if it "could find" Comerica liable for fraud on the court "on any theory," it "would exercise its discretion not to award any relief against [Comerica]." 2022 Bankr. Ct. Op., R. 20-18, PageID 4717. Given its findings regarding the actions and obligations of the various parties, the bankruptcy court was within its discretion to deny relief.

Vining disagrees. He points to expert reports that conclude "Comerica and its counsel actively participated in the fraud on the Court" and violated the Michigan Rules of Professional Conduct. Witte Expert Rep., R. 27-70, PageID 9279–80. This testimony does not help Vining because an expert may not testify as to a legal conclusion. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353–54 (6th Cir. 1994). And even assuming Comerica's attorneys had violated the professional conduct rules, that would not "necessarily" amount to fraud on the court, as all violations of the ethics rules do not automatically satisfy our fraud-on-the-court standard.

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1133 (9th Cir. 2022) (quotation omitted). Regardless, assuming Comerica could be liable for fraud on the court based on its attorney's actions here, Vining has not shown that the bankruptcy court abused its discretion in denying relief.

Accordingly, neither of Vining's vicarious liability theories are persuasive, and we affirm the bankruptcy court's decision not to sanction Comerica for fraud on the court.

## C. Damages

Having concluded that Comerica is not liable for fraud on the court, we next consider whether the bankruptcy court abused its discretion by awarding Vining only partial attorney's fees for Taunt and Plunkett Cooney's fraud on the court. Bankruptcy courts possess the same inherent authority as Article III courts to sanction litigants for misconduct. *In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996). Fraud on the court is the type of misconduct that triggers this authority because it undermines the "administration of justice." *Demjanjuk*, 10 F.3d at 352; *see Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991); *see also Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575, 580 (1946). And when a court exercises this inherent authority, it has broad discretion to select an appropriate remedy. *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 436 (6th Cir. 2004). We therefore review the bankruptcy court's damages award for abuse of discretion—reversing only if we have "a definite and firm conviction that the court below committed a clear error of judgment." *In re Nowak*, 586 F.3d 450, 454 (6th Cir. 2009) (quotation omitted).

We conclude the bankruptcy court did not abuse its discretion by awarding only partial attorney's fees. After the bankruptcy court concluded in 2007 that Taunt and Plunkett Cooney had committed fraud on the court, it required them to disgorge all fees the estate paid for their service as the Chapter 7 trustee and vacated the Comerica Orders. In this adversary proceeding, the bankruptcy court considered further sanctions. Although it determined that the litigation had yielded only a "small financial benefit to the bankruptcy estate" and had resulted in "no financial benefit to non-priority unsecured creditors," it recognized the "the inherent value" of "exposing a fraud on the court" and of "cleans[ing] the court of such fraud." 2022 Bankr. Ct. Op., R. 20-18,

PageID 4739–40.  For that reason, it awarded attorney fees against Taunt and Plunkett Cooney for only some of Vining's work—his time spent securing vacatur of the Comerica Orders, obtaining the disgorgement orders, and quantifying the amount to be disgorged.

Vining now argues the bankruptcy court abused its discretion by giving such limited relief, but we again disagree.  The bankruptcy court declined to award full attorney's fees because Vining's decision to pursue these claims for the better part of the last two decades has provided only a "small financial benefit" to the estate.  *Id.*  Indeed, as far back as 2007, the bankruptcy court warned that it was "far from clear" that Vining's continued pursuit of these claims would benefit the estate and its creditors.  *In re MTG I*, 366 B.R. at 757–58.  Given that historical context, the bankruptcy court's refusal to award full attorney's fees does not near a "clear error of judgment."  *In re Nowak*, 586 F.3d at 454 (quotation omitted).

Finally, Vining argues the bankruptcy court abused its discretion by declining to award punitive damages.  The bankruptcy code explicitly authorizes punitive damages in certain situations.  *See, e.g.*, *In re Dunning*, 269 B.R. 357, 362–63 (Bankr. N.D. Ohio 2001) (11 U.S.C. § 362(k)); *In re Wavelength, Inc.*, 61 B.R. 614, 619 (9th Cir. BAP 1986) (11 U.S.C. § 303(i)); *In re Zordan*, No. 05 B 14742, 2006 WL 1791157, at *9 (Bankr. N.D. Ill. June 27, 2006) (11 U.S.C. § 523(a)).  But when there is no such statutory provision, courts have been wary of allowing bankruptcy courts to exercise "broad punitive sanction powers, given the risk of abuse."  *In re John Richards Homes Bldg. Co.*, 552 F. App'x 401, 414 (6th Cir. 2013).  Nonetheless, Vining argues that the bankruptcy court was required to award punitive damages.  The problem, however, is that he provides no legal authority that purportedly stands for the proposition.  As with the other forms of damages, Vining does not show that the court abused its discretion rather than reached a result he simply dislikes.

## II.    Avoidance Claim

Vining next argues that the post-petition transfers were avoidable under 11 U.S.C. § 549(a).  He contends that, when the bankruptcy court uncovered Taunt's nondisclosure and vacated the Comerica Orders, the vacatur rendered the Comerica orders void "ab initio."  When an order is void ab initio, it is "as if [it] never existed."  *Watt v. United States*, 162 F. App'x 486,

503 (6th Cir. 2006). Thus, in Vining's view, we must act as if the Comerica Orders never existed, meaning that the transfers of estate property that the orders approved were, instead, not properly authorized. And if those transfers were not properly authorized, Vining argues, the transfers are avoidable and require that the property be returned to the estate.

This analysis is flawed, and reviewing de novo, we again affirm the bankruptcy court's rejection of this claim. *See In re Forbes*, 372 B.R. 321, 325 (6th Cir. BAP 2007) ("The bankruptcy court's legal conclusion that the transfer at issue constituted an avoidable fraudulent conveyance is reviewed de novo.")

Section 549 of the bankruptcy code governs avoidance of post-petition transfers. 11 U.S.C. § 549(a). It provides, subject to some exceptions not applicable here, that "the trustee may avoid" a post-petition transfer of the estate's property that "is not authorized" by the bankruptcy court or any provision of the bankruptcy code. *Id.* Avoiding a transfer of property is tantamount to reversing a transaction because it forces the transferee to return the property to the estate. *In re Anderson*, No. 86-05174, 1988 WL 1014968, at *2 (Bankr. D.N.D. June 2, 1988). Given the statutory language, to evaluate whether a post-petition transfer is avoidable in this context, we ask whether, at the time of adjudication, the contested transfer remains "authorized."

Here, as an initial matter, these post-petition transfers were authorized when made. "To 'authorize' means 'to give official permission for something to happen, or to give someone official permission to do something.'" *United States v. Stewart*, 73 F.4th 423, 425 (6th Cir. 2023) (quoting the Cambridge Dictionary). Thus, Taunt needed to have "official permission" for the post-petition transfers. *See id.* And he did. The bankruptcy court, which "speaks officially through its orders," allowed the post-petition transfers through the Comerica Orders. *Flannigan v. Consol. Rail Corp.*, 888 F.2d 127, at *2 (6th Cir. 1989) (per curiam) (unpublished table decision).

Moreover, these transfers remain authorized to this day. True, the bankruptcy court later vacated the Comerica Orders. But the court later explained that "none of the orders that authorized Taunt's actions were vacated with retroactive effect." That construction of the bankruptcy court's own order was, on this record, within the court's discretion. *See In re*

*Cambrian Holding Co.*, 110 F.4th 889, 897 (6th Cir. 2024).  Vining therefore cannot avoid these transfers, under § 549(a), on the ground that they are no longer authorized.

Still, Vining argues that the transfers are avoidable because the Comerica Orders are void ab initio and we must treat them "as if [they] never existed." *Watt*, 162 F. App'x at 503.  We disagree.  As noted above, the bankruptcy court clarified that, when it vacated the Comerica Orders, it was not voiding the post-petition transfers.  The bankruptcy court had discretion to craft and impose the relief it found suitable to remedy Taunt's fraud on the court.  *In re D.H. Overmyer Telecasting Co., Inc.*, 53 B.R. 963, 985 (N.D. Ohio 1984); *see also* 11 U.S.C. § 105(a) (granting bankruptcy courts authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the bankruptcy code]").  And several features of this case, convince us that the bankruptcy court operated within its discretion by vacating the orders without deeming them void ab initio.

As an initial matter*,* we generally treat judgments as void ab initio only when a court lacked jurisdiction to issue the judgment or the underlying proceeding deprived a participant of due process by failing to notice a party or afford them an opportunity to be heard.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010).  Neither of those "infirmities" affect the Comerica Orders, so they are not orders that we would typically treat as void.  *Id.* at 270.

Beyond relying on our typical void-versus-voidable distinction, we also defer to the bankruptcy court's observation that treating the Comerica Orders as void ab initio would likely have no effect on the result of the transfers that Vining claims were unlawful.  Consider, for example, the Comerica Claim Allowance Order, which allowed Comerica's $5.3 million secured claim and recognized its perfected lien on all estate property, and the Comerica Relief from Stay Order, which allowed Comerica to pursue recovery of its claim.  If those orders were void ab initio, Vining's theory seems to suggest that this court would act as if those orders never existed—i.e., were "not authorized . . . by the court," such that Vining could avoid the post-petition transfers and then recover their dollar value, plus interest, costs, and attorney's fees.  *See id.*; 11 U.S.C. §§ 549(a), 550(a).

But Vining's preferred result does not follow, even if we were to deem the orders void ab initio.  To begin, Comerica's claim exceeded the value of MTG's assets, meaning the company had no equity when it filed for bankruptcy.  Because an estate can only recover the value of its equity in property as of the petition date, MTG would have nothing to recover.  *In re Bean*, 252 F.3d 113, 117 (2d Cir. 2001).  Moreover, avoiding any post-petition transfer to Comerica would simply restore Comerica to the position it occupied as the estate's largest secured creditor on the day MTG filed for bankruptcy.  *See* 11 U.S.C. § 502(h) (providing that a claim arising from an avoidable transfer shall be determined and allowed or disallowed "the same as if such claim had arisen before the date of the filing of the [bankruptcy] petition").  In other words, treating the Comerica Orders as void ab initio would create a "a flurry of paperwork to achieve the same result as ha[d] been achieved by [the allegedly unauthorized transfer]." *In re Dave Noake, Inc.*, 45 B.R. 555, 557 (Bankr. D. Vt. 1984).  Treating the orders as void ab initio could also *harm* the estate.  As the bankruptcy court explained, the estate's pre-petition claims against Comerica were worthless, so settling them for $10,000 was a benefit to the estate.  So holding that the Comerica Settlement Order was void ab initio would eliminate that value.

None of the cases Vining relies on persuades us otherwise.  Vining invokes *In re Schwartz*, which held that actions taken in violation of the automatic stay are void.  954 F.2d 569, 575 (9th Cir. 1992).  But, unlike *Schwartz*, this case is not about transfers taken in violation of the stay order.  Instead, Vining challenges the status of the Comerica Relief from Stay Order and the transactions Taunt facilitated while that order lifting the stay was in effect.  Even if *Schwartz* addressed the right question, it would still be inapposite because we expressly rejected its holding in *Easley v. Pettibone Michigan Corp*.  *See* 990 F.2d 905, 911 (6th Cir. 1993) (holding that transfers taken in violation of the automatic stay are voidable, not void).  Vining also cites *In re Garcia*, 109 B.R. 335 (N.D. Ill. 1989), and *In re Leeds*, 589 B.R. 186 (Bankr. D. Nev. 2018).  Like *Schwartz*, these two cases also address transfers that violated the automatic stay, not transactions occurring under an order lifting the stay that was later vacated.  *In re Garcia*, 109 B.R. at 336; *In re Leeds*, 589 B.R. at 192.

### III.    Conversion Claim

Vining also claims that Taunt and Plunkett Cooney are liable for common law and statutory conversion.  Although Vining's brief does not identify the specific assets they allegedly converted, his complaint points to the Comerica Settlement Order, which resolved the estate's pre-petition claims against Comerica for $10,000.  Vining argues that once the bankruptcy court vacated the settlement order, Taunt's exertion of control over the estate's property—that is, his decision to settle the estate's pre-petition claims against Comerica—was retroactively unlawful and therefore amounted to conversion.  Again, we disagree.

The common law tort of conversion turns on whether a person wrongfully exercised control over someone else's personal property.  *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 141 (Mich. 2015).  An "act is wrongful when it is inconsistent with the ownership rights of another." *Victory Ests., L.L.C. v. NPB Mortg., L.L.C.*, No. 307457, 2012 WL 6913826, at *2 (Mich. Ct. App. Nov. 20, 2012) (citing *Check Reporting Servs., Inc. v. Mich. Nat'l Bank–Lansing*, 478 N.W.2d 893, 900 (Mich. 1991)).  So, if Taunt "exercised ownership or control over [the estate] without having the legal authority to do so," it could potentially constitute conversion.  *See Yalda v. Better Made Snack Foods, Inc.*, No. 339211, 2018 WL 6184938, at *2 (Mich. Ct. App. Nov. 27, 2018).

But Taunt, as trustee, was entitled to control the property at issue, and that forecloses Vining's conversion claim.  *See Ritchie v. Attisha*, No. 351061, 2021 WL 137252, at *3 (Mich. Ct. App. Jan. 14, 2021).  Indeed, Taunt held the exclusive statutory authority to administer the estate.  *See* 11 U.S.C § 704(a)(1); *see also id.* §§ 521(a)(4), 542(a), 543(b)(1) (requiring the debtor to turn over the property of the estate to the trustee); *id.* § 363(b)(1), (c)(1) (authorizing the trustee to "use, sell, or lease" property of the bankruptcy estate).  The bankruptcy code empowers the trustee to control and dispose of the estate's assets, and that's what Taunt did.  Taunt's actions fell within the scope of his statutory duties; he "exercise[d] dominion" over the estate by liquidating assets and settling its pre-petition claims.  *Cf. In re York*, 291 B.R. 806, 812 (Bankr. E.D. Tenn. 2003).  He did not act beyond the scope of his statutory duties or contrary to a court order in transferring the estate's assets.  So, there can be no conversion.

In response, Vining argues that Taunt was never qualified to serve as the Chapter 7 trustee due to his undisclosed conflict of interest. On that basis, Vining claims that Taunt never had lawful authority to control the estate's assets, so his actions as trustee were "wrongful." This argument mirrors Vining's avoidance claim; it is based on the notion that we should treat Taunt's authority to transfer property as retroactively invalid, even though the bankruptcy court had granted him that authority at the time of the Comerica Orders. And, likewise, it fails for similar reasons as the avoidance claim. As we explained, the bankruptcy court's decision to vacate the Comerica Orders did not nullify their prior legal effect. Therefore, Taunt's conflict of interest and subsequent disqualification as trustee did not retroactively strip his authority to engage in the earlier, court-authorized transfers. When he exerted control over the estate's property, he was authorized to do so and so cannot be liable for conversion.

Vining's main precedent, *In re Gray*, 64 B.R. 505 (Bankr. E.D. Mich. 1986), does not compel a different result. There, a bankruptcy court concluded that an accountant's failure to disclose a conflict of interest required him to disgorge all the fees he had earned because he was "disqualified ab initio." *Id.* at 507, 509–10. But it did not hold any transactions that had relied on the accountant's work were likewise void ab initio and had to be retroactively undone. Indeed, the *Gray* court expressly declined to impose any additional sanctions on the accountant. *Id.* So it does not help Vining with his claim to undo the Comerica Orders or obtain additional sanctions against Taunt.

Finally, Vining maintains the bankruptcy court improperly applied the de facto trustee doctrine to excuse Taunt's lack of authority to transfer the estate's property. The fatal flaw in this argument is that the court did not apply the doctrine. It merely used the de facto trustee doctrine as an "analogy" to further support its conclusion that Taunt's disqualification as the Chapter 7 trustee did not invalidate his once-authorized conduct. 2022 Bankr. Ct. Op., R. 20-18, PageID 4825–26. Because the court did not apply the doctrine, Vining's argument is inapposite.

## CONCLUSION

For these reasons, we affirm.